IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| HAROLD WAYNE NICHOLS | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. _____ |
| | ) | |
| JONATHAN SKRMETTI, Attorney | ) | |
| General and Reporter, State of | ) | |
| Tennessee, in his official capacity, | ) | **(Execution Set for** |
| | ) | **December 11, 2025)** |
| and | ) | |
| | ) | |
| FRANK STRADA, Commissioner, | ) | |
| Tennessee Department of Correction, | ) | |
| in his official capacity, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| KENNETH NELSEN, Warden, | ) | |
| Riverbend Maximum Security | ) | |
| Institution, in his official capacity, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JOHN DOE Participants, | ) | |
| | ) | |
| Defendants. | ) | |

## Complaint and Request for Declaratory and Injunctive Relief

The Plaintiff, Harold Wayne Nichols, submits this Complaint and Request for

Declaratory and Injunctive Relief for violations of the First, Fifth, Eighth, and

Fourteenth Amendments to the United States Constitution under Rules 57 and 65 of

the Federal Rules of Civil Procedure, 28 U.S.C. § 2201, and 42 U.S.C § 1983.

1

## Introduction

On the afternoon of April 21, 2022—less than one hour before the execution of Oscar Franklin Smith by lethal injection—Tennessee Governor Bill Lee issued a temporary reprieve due to "an oversight in preparation." *See* Statement on Oscar Smith Temporary Reprieve, attached as **Exhibit 1**. As a result of the failure of the Tennessee Department of Correction ("TDOC") to follow its lethal injection protocol, Governor Lee ordered an independent review. *See* Gov. Lee Calls for Independent Review Following Smith Reprieve, attached as **Exhibit 2**.

Three days later, the defendants in *King v. Strada, et al.*, No. 3:18-cv-01234 (M.D. Tenn.) and *Middlebrooks v. Strada, et al.*, No. 3:19-cv-01139 (M.D. Tenn.),[1] submitted an unopposed motion to stay those proceedings "until the conclusion of the independent investigation that Governor Lee has ordered of the lethal injection process in Tennessee and the timely completion of related corrective action." (Doc. 219, PageID#: 12737; Doc. 220, PageID#: 12749).

As part of the defendants' motion, they also submitted an agreement between the parties ("Agreement"). *See* Agreement of the Parties, attached as **Exhibit 3.** The Agreement reads, in relevant part:

> A motion to set King's execution date will not be filed pursuant to Tenn. Sup. Ct. R. 12(4)(A) until a judgment is entered by the district court in case number 3:18-cv-01234 (M.D. Tenn.) or, in the event of an appeal from that judgment, until an opinion is issued by a panel of the United States Court of Appeals for the Sixth Circuit. . . .

---

[1] Except where expressly stated, any reference to *King v. Strada, et al.*, No. 3:18-cv-01234 (M.D. Tenn.) shall include and incorporate *Middlebrooks v. Strada, et al.*, No. 3:19-cv-01139 (M.D. Tenn.) and vice versa, as the cases were consolidated for purposes of the Agreement.

2

In the event Middlebrooks's execution date is reset before the conclusion of a trial or other disposition of his complaint in case number 3:19-cv-01139 (M.D. Tenn.), Defendants will not oppose a motion for stay of execution for Middlebrooks filed in that district court case until a judgment is entered by the district court in that case or, in the event of an appeal, a motion for stay of execution filed under the relevant case number in the Sixth Circuit until an opinion is issued by a panel of the Sixth Circuit. If such a motion for stay is denied, Defendants also agree to advocate for another reprieve from the Governor until a judgment is entered by the district court or, in the event of an appeal, an opinion has been issued by a panel of the Sixth Circuit.

(Doc. 219-3, PageID#: 12746).

On May 10, 2022, the Court entered an order granting the defendants' motion. (Doc. 221, PageID#: 12768). The Court's order also instructed that if an execution date is set for "either Plaintiff [in that litigation]" before the investigation is complete and the cases reopened, "Defendants shall immediately notify the Court." (*See* Doc. 221, PageID#: 12769).

On April 1, 2025, a Court in this District granted an unopposed stay in *Middlebrooks v. Strada, et al.*, No. 3:19-cv-01139 (M.D. Tenn.) pursuant to the Agreement. *See* Order, attached **Exhibit 4**.

As a similarly situated person to the plaintiffs in *King v. Strada, et al.*, No. 3:18-cv-01234 (M.D. Tenn.) and *Middlebrooks v. Strada, et al.*, No. 3:19-cv-01139 (M.D. Tenn.), the Plaintiff here is entitled to due process and equal protection under the Fifth and Fourteenth Amendments to the United States Constitution and Article I of the Tennessee Constitution. The Plaintiff hereby moves this Court for an injunction staying his execution pending resolution of the lawsuits in *King v. Strada,*

*et al.*, No. 3:18-cv-01234 (M.D. Tenn.), *Middlebrooks v. Strada, et al.*, No. 3:19-cv-01139 (M.D. Tenn.), and this challenge.

Furthermore, subjecting the Plaintiff to execution by lethal injection while the legality of the revised lethal injection protocol is being challenged is cruel and unusual punishment in violation of the Tennessee Constitution and the United States Constitution and denies the Plaintiff due process and equal protection under the law. Accordingly, the Plaintiff alleges that the revised lethal injection protocol is unconstitutional on its face, as applied by TDOC's reckless and incompetent implementation of the protocol, and as applied to the Plaintiff individually based on his unique health conditions.

Any attempts to execute the Plaintiff based on this unconstitutional protocol is a violation of 42 U.S.C § 1983, Tenn. Code Ann. § 29-14-101 *et seq.*, Tenn. Code Ann. § 4-5-101 *et seq.*, and Article I, §§ 2, 3, 8, 16, 17 of the Tennessee Constitution, Article VI, § 2 of the United States Constitution, and the First, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

## Incorporation

The Plaintiff expressly incorporates each allegation and/or subpart in this Complaint in all sections and subsections as if fully set forth therein.

## Parties

1.     The Plaintiff Harold Wayne Nichols is a United States citizen. He is a death-sentenced prisoner residing at Riverbend Maximum Security Institution

4

(RMSI) in this District in Nashville, Davidson County, Tennessee, and in the custody of the TDOC.

2.      The Defendant Jonathan Skrmetti is the Attorney General and Reporter of the State of Tennessee, the state agency located in this District in Nashville, Davidson County, Tennessee. The Plaintiff sues Attorney General Skrmetti in his official capacity. The Attorney General and Reporter has previously filed motions to set the Plaintiff's execution date under Tenn. Sup. Ct. R. 12(4)(A). Additionally, as counsel for the Defendants Strada and Nelsen, the Defendant Skrmetti, through his agents, successors, and assigns, entered into the Agreement filed in *King v. Strada, et al.*, No. 3:18-cv-01234 (M.D. Tenn.) and *Middlebrooks v. Strada, et al.*, No. 3:19-cv-01139 (M.D. Tenn.). The Defendant Skrmetti is a state actor acting under color of state law, and his action refusing to enter into a similar agreement with the Plaintiff violates his constitutional and statutory rights.

3.      The Defendant Frank Strada is the Commissioner of TDOC, the state agency located in this District in Nashville, Davidson County, Tennessee. The Plaintiff sues Commissioner Strada in his official capacity. Upon information and belief, the Defendant Strada will oversee the administration of the Plaintiff's execution and is party to the Agreement filed in *King v. Strada, et al.*, No. 3:18-cv-01234 (M.D. Tenn.) and *Middlebrooks v. Strada, et al.*, No. 3:19-cv-01139 (M.D.

Tenn.).[2] The Defendant Strada is a state actor acting under color of state law, and his action in executing the Plaintiff violates his constitutional and statutory rights.

4.     The Defendant Kenneth Nelsen is the Warden of RMSI in this District in Nashville, Davidson County, Tennessee, at which the Plaintiff is held in custody under sentence of death and where his execution will occur. The Plaintiff sues Warden Nelsen in his official capacity. Upon information and belief, the Defendant Nelsen is directly responsible for executing the Plaintiff at RMSI and is a party to the Agreement filed in *King v. Strada, et al.*, No. 3:18-cv-01234 (M.D. Tenn.) and *Middlebrooks v. Strada, et al.*, No. 3:19-cv-01139 (M.D. Tenn.). The Defendant Nelsen is a state actor acting under color of state law, and his actions in executing the Plaintiff violates his constitutional and statutory rights.

5.     The Defendant JOHN DOE Participants include, but are not limited to, the Special Operations Team, Restraint Team, Escort Team, IV Team, Execution Team, Physician(s), Pharmacist(s), Supplier(s), Manufacturer(s), Procurer(s), Nurse(s), Physician Assistant(s), Emergency Medical Technician(s), Paramedic(s), Military Corpsmen with relevant medical training, Medical Examiner(s), Medical Personnel, Guard staff, and any other persons involved in executing the Plaintiff (collectively, "JOHN DOE Participants"). Because the Defendants have secreted-away many of the details of the revised lethal injection protocol and have only

---

[2] The Defendants have concealed or secreted-away many of the details of the revised lethal injection protocol and have only provided a heavily redacted version to counsel for the Plaintiff. Accordingly, the Plaintiff here is unable to affirmatively state which person or persons are responsible for his execution.

6

provided a heavily redacted version to counsel for the Plaintiff, the Plaintiff is unable to affirmatively state which person or persons are responsible for his execution. Upon information and belief, the JOHN DOE Participants are state actors acting under color of state law, and their actions in executing the Plaintiff violates his constitutional and statutory rights.

## Jurisdiction and Venue

6.     This Court has jurisdiction under 28 U.S.C. § 1331 (federal question), § 1343 (civil rights), § 2201 (declaratory relief), and § 2202 (further relief), 42 U.S.C § 1983, Tenn. Code Ann. § 29-14-101 *et seq.*, Tenn. Code Ann. § 4-5-101 *et seq.*, and Article I, §§ 2, 3, 8, 16, 17 of the Tennessee Constitution, Article VI, § 2 of the United States Constitution, and the First, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

7.     Venue is proper in this Court because the Plaintiff is a death-sentenced prisoner residing in this District in Nashville, Davidson County, Tennessee.

8.     Venue is also proper in this Court because, upon information and belief, the Defendants Strada and Nelsen are responsible for executing the Plaintiff at RMSI in Nashville, Davidson County Tennessee, where this Court is located. Upon further information and belief, the JOHN DOE Participants are responsible for executing the Plaintiff at RMSI in Nashville, Davidson County, Tennessee, where this Court is located, or are subject to Tennessee's long-arm statutes.

9.     The Plaintiff has complied with the requirements of the Prison Litigation Reform Act, 42 U.S.C. § 1997e, by grieving the revised lethal injection

7

protocol even though such a grievance is futile. The Defendants have denied the grievance by stating that the grievance of the protocol is inappropriate per TDOC Policy 501.01 and because "the information provided is in accordance with state law and agency policy." *See* Grievance Documents, attached as **Exhibit 5**.

<u>Facts</u>

10.     The Plaintiff is currently scheduled to be executed on December 11, 2025. *See* Order for Nichols, attached as **Exhibit 6**.

11.     Upon information and belief, the Plaintiff will be executed prior to the resolution of the litigation in *King v. Strada, et al.*, No. 3:18-cv-01234 (M.D. Tenn.), *Middlebrooks v. Strada, et al.*, No. 3:19-cv-01139 (M.D. Tenn.), and this challenge.

12.     The Plaintiff is not protected by the Court's order in *King v. Strada, et al.*, No. 3:18-cv-01234 (M.D. Tenn.) and *Middlebrooks v. Strada, et al.*, No. 3:19-cv-01139 (M.D. Tenn.), (Doc. 221, PageID#: 12769), or the Agreement filed in those cases, (Doc. 219-3, PageID#: 12745). Accordingly, the Plaintiff is under threat of irreparable injury in the form of his unconstitutional execution.

13.     The Defendants have a history of error and malfeasance regarding the Tennessee lethal injection protocol, including[3]:

- Attempting to acquire drugs for lethal injection from a veterinarian;[4]

---

[3] The following information is taken from the litigation in *King v. Strada, et al.*, No. 3:18-cv-01234 (M.D. Tenn.), filed before the release of the Independent Review ordered by Governor Lee.

[4] Case 3:18-cv-01234 Doc. 180-3, PageID #5585.

- Searching for other drug suppliers when one supplier restricted the sale of their drugs for use in lethal injection; [5]

- Exploring the possibility of using other drugs, including Ketamine, as a replacement for the restricted lethal injection drugs; [6]

- Discussing ways to creatively compound the drugs to save the State of Tennessee money; [7]

- Failing to consult the Pharmacist[8] about the lethal injection protocol. In fact, former TDOC General Counsel Debbie Inglis drafted the protocol without reviewing medical articles, talking to pharmacists, doctors, or other experts, or consulting with other states;[9]

- Regularly deviating from the lethal injection protocol;[10]

---

[5] *Id.* at PageID #5595–96.

[6] *Id.* at PageID #5597, #5600.

[7] *Id.* at PageID #5602–03.

[8] The "Pharmacist" is a descriptor used to describe a confidential party in that litigation.

[9] Case 3:18-cv-01234 Doc. 200, PageID #11728.

[10] *Id.* at PageID #11766; *see also id.* at PageID #11774–76 ("During the execution of Donnie Johnson, the Execution Team deviated from the protocol by delaying the preparation of midazolam by two hours and failing to measure the rate of injection of the lethal injection chemicals. Furthermore [ ] the midazolam that TDOC used to execute Donnie Johnson was expired. . . . The vecuronium bromide and potassium chloride used to execute Donnie Johnson were also expired. . . . During the execution of Billy Ray Irick, the Execution Team [failed] to prepare the second set of midazolam; [failed] to measure the rate of injection; and [delayed] the preparation of midazolam by two hours. Furthermore, the vecuronium bromide and potassium chloride TDOC used to execute Billy Ray Irick were expired. . . . Warden Mays allows expired drugs to remain stored at the facility, in violation of the Protocol. Warden Mays does not require his designee to deliver the lethal injection chemicals to the execution chamber, in violation of the Protocol." (citations omitted)).

9

- Failing to properly train the personnel enlisted to carry out lethal injection;[11]

- Preparing expired drugs in the executions of Donnie Johnson and Billy Ray Irick;[12]

- Failing to follow written instructions related to the drugs used for execution;[13]

- Personally transporting lethal injection drugs across state lines to RMSI;[14]

- Utilizing a Pharmacist who was fined by a state board of pharmacy for failing to ensure that pharmacy technicians under his supervision possessed valid licenses;[15]

- Failing to compound lethal injection drugs in accordance with United States Pharmacopeia guidelines; and failing at least one test or not subjecting the drugs to tests required by United States Pharmacopeia;[16]

---

[11] *Id*.; *see also id*. at PageID #11768 ("[The Warden] admits that he would not be able to tell the difference between a 'sedated' prisoner and one under surgical anesthesia, and that he would not be able to tell if someone were unresponsive but still sensate to pain."); PageID #11813 ("The Executioner uses the same size syringes for all three drugs even though the Pharmacy's instructions specify that potassium chloride is to be drawn up in a different size syringe than the midazolam. The Executioner does not know how he learned to prepare the vecuronium bromide and does not recall ever having talked with the Pharmacist about how to prepare the drug." (citations omitted)); PageID #11816; PageID #11820.

[12] *Id*. at PageID #11786–87.

[13] *Id*. at PageID #11789; *see also id*. at PageID #11815 ("A back-up or 'blue' set of midazolam syringes was not prepared for Mr. Irick's execution.").

[14] *Id*. at PageID #11790–92.

[15] *Id*. at PageID #11793–96.

[16] *Id*.

- Failing to test for endotoxins in every batch of drugs;[17]

- Failing to properly test for potency of lethal injection drugs;[18]

- Failing to follow compounding recipes for lethal injection drugs;[19]

- Receiving compounded lethal injection drugs prior to receiving test results from a third-party laboratory;[20]

- Failing to properly store lethal injection drugs according to the protocol;[21]

- Failing to conduct biannual inventory of lethal injection drugs and failing to dispose of expired drugs.[22]

14. The Report and Findings of the Independent Review ordered by Governor Lee acknowledged these errors and identified others, including:

- The State of Tennessee never provided the pharmacy tasked with testing its lethal injection chemicals with a copy of the lethal injection protocol;[23]

- No employee of the TDOC informed the pharmacy tasked with testing the lethal injection chemicals that it should conduct an endotoxin test until the eve of Oscar Smith's scheduled execution;[24]

---

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.* at PageID #11797.

[21] *Id.*; *see also id.* at PageID #11800.

[22] *Id.* at PageID #11807.

[23] Tenn. Lethal Injection Protocol Investigation Rep. and Findings, Butler Snow, LLP (Dec. 13, 2022), filed in Case 3:18-cv-01234 as Doc. 225-1, PageID #12840.

[24] *Id.*

- The pharmacy that tested Tennessee's lethal injection chemicals only tested the chemicals for potency and sterility, not endotoxins, because the pharmacy followed United States Pharmacopeia testing guidelines, not Tennessee's lethal injection protocol;[25]

- The chemicals used in the execution of Billy Ray Irick in August 2018 were not tested for endotoxins, and the Midazolam used during Irick's execution was not tested for potency;[26]

- The chemicals to be used in the event that Edmund Zagorski opted for lethal injection in November 2018 were not tested for endotoxins and failed potency testing;[27]

- The chemicals used in the May 2019 execution of Donnie Edward Johnson were not tested for endotoxins;[28]

- The chemicals to be used in the event that Stephen West opted for lethal injection in August 2019 were not tested for endotoxins;[29]

- The chemicals to be used in the event that Lee Hall opted for lethal injection in December 2019 were not tested for endotoxins;[30]

- The chemicals to be used in the event that Nicholas Sutton opted for lethal injection in February 2020 were not tested for endotoxins.[31]

15. Ultimately, the Independent Review concluded that there was an "absence of adequate expertise, guidance, and counsel either enlisted by or provided to TDOC in connection with Tennessee's lethal injection process. Instead, TDOC

---

[25] *Id.*

[26] *Id.*

[27] *Id.* at PageID #12840–12841.

[28] *Id.* at PageID #12841.

[29] *Id.*

[30] *Id.*

[31] *Id.*

operated in a task-oriented, tunnel-vision manner that failed to appreciate the interwoven nature of the lethal injection process as a whole."[32]

16. Tennessee's revised lethal injection protocol does little to ameliorate these deficiencies.

17. The protocol did not undergo agency rulemaking as prescribed in the Tennessee Uniform Administrative Procedures Act.

18. Upon information and belief, the Defendants did not undergo agency rulemaking to prevent the introduction of evidence of the painful and tortuous effects of pentobarbital.

19. The revised protocol is intentionally vague and devoid of detail. As a result, the Plaintiff is deliberately and unconstitutionally made unaware of the manner in which the Defendants intend to execute him.

20. Additionally, the revised protocol is subject to change on the whim of the Commissioner "when deemed necessary to effectuate the purpose" of the protocol. Any such change would be arbitrary and capricious in violation of the laws and rights declared herein.

21. Upon information and belief, the purpose of the protocol is to execute the Plaintiff and the revised protocol gives the Commissioner the tools to effectuate the Plaintiff's execution regardless of the protocol, the method, or the way in which the execution is carried out, violating the Plaintiff's constitutional and statutory rights.

---

[32] *Id.* at 12839–12840.

22.     Tennessee intends to use a single drug pentobarbital 100 ml of a 50 mg/ml solution (a total of 5 grams) to execute the Plaintiff.

   a.  Upon information and belief, pentobarbital causes flash (acute) pulmonary edema as it enters the blood stream and passes through the lungs and burns the membranes of the lungs. Fluid then enters the lungs causing a drowning sensation akin to waterboarding. The drowning sensation is "one of the most powerful, excruciating feelings known to man." *See* DOJ Review of Fed. Execution Protocol, at 14 (Jan. 2025), attached as **Exhibit 7**.

   b.  The injection of pentobarbital itself can "cause extreme pain upon [] injection." *See* **Exh. 7** at 14. It can also "damage the veins in the body, causing the drug to leak into the surrounding tissues," causing "significant excruciating pain." *See* **Exh. 7** at 14–15.

   c.  Upon information and belief, pentobarbital is a barbiturate that causes unresponsiveness but not unconsciousness.

   d.  Upon information and belief, even if a prisoner appears drowsy upon injection of the pentobarbital they are sharply awakened with the sensation of drowning and are very likely conscious and being tortured as they are executed.

23.     Because pentobarbital causes extreme and superadded physical pain and acute mental terror, its use in this context constitutes cruel and unusual punishment under the United States Constitution and the Tennessee Constitution.

14

24.     The revised protocol does not state the source of the supplier, the procurement process or method—whether legitimate or through the gray or black market, or whether the pentobarbital is compounded or manufactured.

25.     Upon information and belief, transportation of lethal injection chemicals across state lines violates state and federal law. The Plaintiff reserves the right to amend this Complaint if discovery shows that the Defendants are engaged in the unlawful transportation of lethal injection chemicals.

26.     The revised protocol makes vague reference to quality assurance and quality control testing, but the Plaintiff is deliberately and unconstitutionally made unaware of the specific testing and regulatory requirements that the Defendants are subject to in their handling and administration of pentobarbital for lethal injection.

27.     The revised protocol vaguely references that the Defendants will follow recommended guidelines for safe transportation and storage of pentobarbital. However, without information on whether the pentobarbital is compounded, manufactured, or procured legitimately or through the gray or black market, the source of the pentobarbital, and the specific regulations that apply to it, the Plaintiff is not able to sufficiently challenge the revised protocol. The Plaintiff reserves the right to amend this Complaint if discovery reveals information supporting this allegation.

28.     The revised protocol requires the Plaintiff to select his method of execution thirty days prior to his scheduled execution. However, the Tennessee Supreme Court's Order requires the Warden of RMSI to notify the Plaintiff by

November 26, 2025 of the method of execution. *See* **Exh. 6**. The revised protocol permits the Plaintiff fourteen days to withdraw his waiver.

29.     Fourteen days before the Plaintiff's execution is November 27, 2025—the Thanksgiving Holiday—giving the Plaintiff one day to decide how the Defendants should execute him. The revised protocol does not address the mechanics of the Plaintiff withdrawing his waiver, especially when the deadline falls on a state holiday.

30.     In other words, the revised protocol requires the Plaintiff to elect his method of execution before he is aware whether the Defendants have the pentobarbital to execute him; before he is aware of whether the pentobarbital has expired; and before he is aware of whether the pentobarbital has been tested.

31.     The selection criteria for the members of the execution team are vague, subjective, and secretive.

32.     The selection criteria for specially trained non-department personnel are vague, subjective, and secretive.

33.     The revised protocol calls for physician assistance before, during, and after the administration of pentobarbital, violating the American Medical Association's code of ethics.

34.     The revised protocol does not state whether "cut-down" or other procedures that may be needed as problems arise are prohibited or allowed. Rather, the protocol makes vague reference to a "central line" and gives the Commissioner the unilateral power to change the protocol on a whim.

16

35.     Under the revised protocol, clergy are not allowed to be in the execution chamber with the Plaintiff when the execution occurs. These actions violate the Plaintiff's rights under the First Amendment of the United States Constitution, Article I of the Tennessee Constitution, the Religious Freedom Restoration Act of 1993 (RFRA), the Tennessee Preservation of Religious Freedom Act codified at Tennessee Code Annotated § 4-1-407, and the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA).

36.     Additionally, the revised protocol severely limits the prisoner's right to liberty in the final 12 hours of their life by instituting a "blackout policy."

37.     Specifically, the revised protocol imposes arbitrary restrictions on the right of an individual to communicate with the outside world, including their clergy, during the final 12 hours prior to his or her scheduled execution.

38.     The revised protocol makes no provision for the Plaintiff's counsel to gain immediate access to a telephone before and during the execution so that they may contact the courts to protect the Plaintiff's right against cruel and unusual punishment.

39.     Specifically, the Plaintiff's right of access to the courts includes and encompasses counsel's right to access a telephone before, during, or after the Plaintiff's execution.

40.     Additionally, the revised protocol substantially limits counsel's access to and/or the witnessing of key parts of the execution process, forestalling counsel's ability to access the courts to protect the Plaintiff's constitutional rights.

17

41.     Specifically, the revised protocol prohibits counsel from witnessing the Defendants securing the Plaintiff to the execution gurney and when and how the physician confirms the Plaintiff's death. Because of heavy redactions to the revised protocol provided to counsel for the Plaintiff, counsel may be prohibited from witnessing other, currently unknown, procedures. The Plaintiff reserves the right to amend this Complaint to allege further unconstitutional hinderances.

42.     Additionally, there is no provision for providing the Plaintiff or counsel with notice upon the Commissioner's unilateral decision to change the protocol when "deemed necessary," or any ability for the Plaintiff to challenge such changes in violation of due process.

43.     Upon information and belief, the Defendants and their agents and assigns including, but not limited to, the execution team, have not properly prepared or trained to administer the revised protocol within the time limits proscribed in the protocol to carry out the Plaintiff's execution.

44.     The vagueness of the revised protocol and the heavy redactions in the copy provided to the Plaintiff's counsel may hide bases for challenging the constitutionality of the protocol and violates the Plaintiff's right to due process and equal protection.

45.     The administration of the revised protocol, as written, would be haphazard and arbitrary and presents a risk that is sure or very likely to cause serious illness and needless suffering and constitutes cruel and usual punishment under the United States Constitution and the Tennessee Constitution.

18

## I.     Specific allegations related to the Plaintiff

46.     Upon information and belief, the Plaintiff presents with individual physical characteristics that include, but are not limited to his advanced age, lung disease and scarring, obesity, fatty deposits on his liver, cholecystitis, and Type 2 diabetes.

47.     The Plaintiff's individual physical characteristics make it sure or very likely that there is a substantial risk that he will experience unnecessary and serious pain and needless suffering of the type alleged throughout this complaint if subjected to execution by the revised protocol.

48.     The Plaintiff's physical characteristics of his advanced age, lung disease and scarring, obesity, fatty deposits on his liver, cholecystitis, and Type 2 diabetes make it significantly more difficult to achieve and/or maintain peripheral IV access on the Plaintiff that is needed to ensure proper delivery of the pentobarbital.

49.     The Plaintiff's individual physical characteristics of his advanced age, lung disease and scarring, obesity, fatty deposits on his liver, cholecystitis, and Type 2 diabetes make it sure or very likely that there is a substantial risk that he will be subjected to unnecessary and serious pain and needless suffering as the Defendants attempt to achieve peripheral IV access on him during the execution process, and when the Defendants are unable to maintain peripheral IV access on him, make it sure or very likely that there is a substantial risk that the Plaintiff's individual physical characteristics will interfere with the proper delivery of the pentobarbital causing serious illness and needless suffering.

19

50.     Improper delivery of the pentobarbital including, but not limited to, vein damage and leakage, presents a risk that is sure or very likely to cause serious illness, needless suffering, and/or prolonged death.

51.     The Plaintiff's physical characteristics of his advanced age, lung disease and scarring, obesity, fatty deposits on his liver, cholecystitis, and Type 2 diabetes make it sure or very likely that there is a substantial risk that he will begin to suffocate and experience a drowning sensation while he remains aware or sensate.

52.     The Plaintiff's individual characteristics of his advanced age, lung disease and scarring, obesity, fatty deposits on his liver, cholecystitis, and Type 2 diabetes create a substantial risk that he will have an adverse reaction to the pentobarbital.

53.     Additionally, the Plaintiff may develop or may currently have additional physical and/or psychological characteristics increasing the sure or very likely risk of unnecessary and serious pain and needless suffering caused by the revised lethal injection protocol.

54.     The Defendants' revised protocol fails to account for any unique physical characteristics of the Plaintiff that may affect the efficacy of, or the risk of harm caused by the revised protocol.

55.     The Defendants' revised protocol also fails to account for any unique psychological or mental characteristics of the Plaintiff that may affect the efficacy of, or the risk of harm caused by the revised protocol.

56. The Plaintiff is a practicing Christian and the prohibition on clergy in the execution chamber violates his sincerely held religious beliefs in violation of the First Amendment to the United States Constitution.

57. Upon information and belief, the Defendants and their agents and assigns including, but not limited to, the execution team, have not properly prepared or trained for any of the unique challenges that the Plaintiff's individual characteristics may present while carrying out his execution, increasing the risk that the Plaintiff is sure or very likely to experience unnecessary and serious pain and needless suffering.

58. Because the Defendants do not account for any individual characteristics the Plaintiff currently possesses or may develop before his scheduled execution, the substantial risk of unnecessary and serious harm is sure or very likely.

**II.    Allegations related to the requirement to plead an alternative**

59. Tennessee's adoption of the execution secrecy provisions in Tennessee Code Annotated § 10-7-504(h) and the Defendants' heavy redactions of the revised protocol will substantially, if not entirely, impair the Plaintiff's ability to allege and prove alternate execution methods and procedures. The Plaintiff reserves the right to argue that any alleged defects in these allegations and/or proof with respect to such issues are the result of the secrecy imposed by the statute and the Defendants, and not any failure by the Plaintiff and to amend this pleading.

60. The Plaintiff asserts his Fifth Amendment right against self-incrimination insofar as his constitutional rights may permit him to decline to

affirmatively plead an alternative method or manner for execution that would not be cruel and unusual.

61.     The Plaintiff asserts that any requirement that he plead an alternative method of execution likewise violates the Eighth Amendment because there was no such requirement when the Eighth Amendment was ratified in 1791 nor when the Fourteenth Amendment was ratified in 1868, and thus no such requirement can, and does, exist now.

62.     Additionally, the Plaintiff asserts that any alternative pleading requirement violates the due process clauses of the Fifth and Fourteenth Amendments of the United States Constitution and Article I of the Tennessee Constitution, because imposition of such a requirement in a free nation shocks the conscience and offends principles of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental, where no such requirement existed at common law or at the founding of the Nation.

63.     The Plaintiff further asserts that the alternative pleading requirement violates his rights to conscience and/or to the free exercise of religion under the First Amendment of the United States Constitution, Article I of the Tennessee Constitution, the Religious Freedom Restoration Act of 1993 (RFRA), the Tennessee Preservation of Religious Freed Act codified at Tennessee Code Annotated § 4-1-407, and the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA).

64.    The Plaintiff is a practicing Christian and the requirement that he plead an alternative violates his sincerely held religious beliefs against participating in any process leading to his own death.

65.    Notwithstanding any allegation of an alternative execution method asserted in this Complaint, the Plaintiff cannot be required to plead or prove an alternative method of execution because such a requirement is a substantial burden on his sincerely held religious beliefs, does not further a compelling governmental interest, and is not the least restrictive means for the government to accomplish its stated interest.

66.    Notwithstanding any allegation of an alternative execution method asserted in this Complaint, the Plaintiff asserts that he is unable to constitutionally allege an alternative method or manner of execution because he is insufficiently competent to be able to knowingly and willingly instruct the Defendants how to kill him or, in the alternative, is insufficiently competent to assist his attorneys in identifying an alternative method or manner of execution because he has insufficient medical training and knowledge to be able to identify such an alternative or because his mental health impairments or cognitive deficiencies or intellectual disabilities render him unable to do so.

67.    If the Plaintiff must allege alternative methods of execution, he alleges that the following alternatives are feasible, readily implemented, and in fact significantly reduce a substantial risk of severe pain as presented in the revised protocol.

23

68. The Plaintiff, by alleging any of these alternatives, alleges only that the alternatives in question are available in all relevant respects and subject him to substantially less risk of experiencing severe or serious pain and needless suffering than the risk posed by the current execution method the Plaintiff challenges.

69. The reduction in risk of severe or serious pain and suffering created by each alternative is clear and considerable in comparison to the level of risk of severe pain and suffering created by the current execution method.

70. Similarly, the reduction in level of severity of pain and suffering created by each alternative is clear and considerable in comparison to the level of severity of pain and suffering created by the current execution method.

71. The Plaintiff also alleges that each of the following methods of execution renders unnecessary and needless any suffering and pain associated with pentobarbital. The pain and suffering inflicted by the Defendants' current revised protocol is more than necessary to carry out a death sentence and is therefore "superadded" pain and suffering that the Eighth Amendment forbids.

72. The degree of risk of pain and suffering to which the Plaintiff will be subjected by the current revised protocol is particularly constitutionally inappropriate, constitutionally problematic, unconstitutionally severe or serious, constitutionally excessive, and unconstitutionally high when compared to the degree of risk of pain and suffering posed by each of the following alleged alternatives.

73. The level of pain and suffering to which the Plaintiff will be sure or very likely subjected by the current revised protocol is particularly constitutionally

inappropriate, constitutionally problematic, unconstitutionally severe or serious, constitutionally excessive, and unconstitutionally high when compared to the level of pain and suffering posed by each of the following alleged alternatives.

74.    For any of the alleged alternatives that follow which are contemplated to be conducted outdoors, the Defendants should be able to take sufficient measures to resolve any purported concerns about safety or observation from above the execution site by drone or other similar apparatus.  Among the measures that the Defendants should be able to implement to remedy any such purported concerns would be erection around and above the execution site of a tent-like structure or other barrier to visible observation from above, which would not affect the Defendants' ability to implement the alleged alternative.

### A.    Alternative 1: Execution by firing squad.

75.    The Defendants should be able to carry out an execution by firing squad using execution procedures that are the same or similar as the Procedure for Military Executions, Army Regulations No. 633-15 (Apr. 7, 1959); the substantively identical procedures for carrying out an execution as provided in U.S. War Department Pamphlet No. 27–4, adopted June 12, 1944; the substantively identical procedures for carrying out an execution as provided in U.S. Department of the Army Pamphlet No. 27–4, adopted December 1947; or by using the same or similar procedures as defined in the execution protocol involving shooting to death with bullets used by other jurisdictions, such as Mississippi, Oklahoma, Utah, and South Carolina.

25

76.     This method provides a feasible and readily implemented alternative method of execution that significantly reduces the substantial risk of unnecessary pain and suffering posed by the revised protocol. Furthermore, there is no other state-based impediment to adopting that method and there are not reasonable or otherwise justifiable reasons for the Defendants to refuse to implement this alternative.

77.     Upon information and belief, the Defendants possess or have within their control, or could readily obtain, the firearms, ammunition, personnel, and training necessary to carry out an execution by firing squad as alleged in this alternative.

78.     The Supreme Court has upheld the firing squad as a method of execution. *Wilkerson v. Utah*, 99 U.S. 130, 134-35 (1878).

79.     Upon information and belief, this manner and method of execution is feasible and readily implemented because the Big Buck Shooting Range is located on the grounds of RMSI and can easily accommodate what little equipment is required for an execution by firing squad. In the alternative, the Defendants should be able to construct an enclosure in the same way that the Utah Department of Corrections constructed its execution mechanisms. Or, the Defendants can construct an enclosure for the purpose of death by firing squad by converting the current death chamber into a firing squad range in the same way as the South Carolina Department of Corrections. Each enclosure can be constructed with ordinary efforts.

26

80.     Upon information and belief, execution by this manner and method would avoid the unnecessary and severe pain and suffering caused by, but not limited to, flash (acute) pulmonary edema from pentobarbital.

81.     The firing squad significantly reduces a substantial risk of unnecessary and severe pain when compared to the revised protocol.

82.     Upon information and belief, the Defendants should also be able to provide for witness viewing with ordinary efforts.

83.     Upon information and belief, the Defendants can provide ear protection and protective safety glasses for all involved with ordinary efforts.

84.     In the event the Court finds Alternative 1 insufficient to satisfy the alternative-pleading requirement, another alternative method of execution exists which significantly reduces the substantial risk of pain attendant to Tennessee's revised protocol.

## B.     Alternative 2: A single bullet to the back of the head.

85.     The Procedures for Military Executions provide a back-up plan in case of human error or mistake: the "coup de grace."

86.     Upon information and belief, the Defendants possess or have within their control, or could readily obtain, the firearms, ammunition, personnel, and training necessary to carry out an execution by single bullet to the back of the head as alleged in this alternative.

87.     The use of trained and experienced professionals and the contemplated protocol, which involves the use of a single bullet to the back of the head in close range, could reduce any error rate in firing-squad executions.

88.     Upon information and belief, this manner and method of execution is feasible and readily implemented because the Big Buck Shooting Range is located on the grounds of RMSI and can easily accommodate what little equipment is required for an execution by single bullet. In the alternative, the Defendants should be able to construct an enclosure in the same way that the Utah Department of Corrections constructed its execution mechanisms. Or, the Defendants can construct an enclosure for the purpose of death by single bullet by converting the current death chamber into a firing range in the same way as the South Carolina Department of Corrections. Each enclosure can be constructed with ordinary efforts.

89.     Upon information and belief, execution by this manner and method damages the brain stem, shutting down breathing and cardiac activity near instantly.

90.     A single bullet to the back of the head significantly reduces a substantial risk of unnecessary and severe pain when compared with execution under Tennessee's revised protocol.

91.     Upon information and belief, execution by this manner and method would avoid the unnecessary and severe pain and suffering caused by, but not limited to, flash (acute) pulmonary edema from pentobarbital.

## Count I:

**Injunction under 28 U.S.C. §§ 2201–02 for violations of the Due Process Clause of the Fifth Amendment and the Due Process and Equal Protection Clauses of the Fourteenth Amendment and Article I of the Tennessee Constitution**

92. The Plaintiff is a similarly situated person to the plaintiffs in *King v. Strada, et al.*, No. 3:18-cv-01234 (M.D. Tenn.) and *Middlebrooks v. Strada, et al.*, No. 3:19-cv-01139 (M.D. Tenn.) in that he is a death-sentenced prisoner residing in this District in Nashville, Davidson County, Tennessee, and in the custody of TDOC.

93. The Plaintiff is a similarly situated person to the Plaintiff Middlebrooks in that they are both scheduled for execution by the same revised lethal injection protocol in 2025.

94. The Defendants have refused to extend the Agreement to similarly situated prisoners residing in this District in Nashville, Davidson County, Tennessee, and in the custody of TDOC including, specifically, the Plaintiff here. Additionally, the Defendants have moved pursuant to Tennessee Supreme Court Rule 12(4)(A) to set dates for other similarly situated prisoners residing in this District in Nashville, Davidson County, Tennessee, and in the custody of TDOC, which proves that they do not intent to extend the Agreement to other similarly situated prisoners, including the Plaintiff here.

95. By giving the plaintiffs in *King v. Strada, et al.*, No. 3:18-cv-01234 (M.D. Tenn.) and *Middlebrooks v. Strada, et al.*, No. 3:19-cv-01139 (M.D. Tenn.) the benefit of the Agreement, but not to other similarly situated persons on death row in this District in Nashville, Davidson County, Tennessee, and in the custody of TDOC, the

Defendants are unequally applying the laws against the Plaintiff here in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article I of the Tennessee Constitution.

96.     Specifically, the Plaintiff has a date of execution and the Defendants intend to carry out his execution while the Defendants do not intend to carry out the executions (or seek a date of execution) for the similarly situated plaintiffs in *King v. Strada, et al.*, No. 3:18-cv-01234 (M.D. Tenn.) and *Middlebrooks v. Strada, et al.*, No. 3:19-cv-01139 (M.D. Tenn.).

97.     Furthermore, as to the Plaintiff Middlebrooks, the Defendants "will not oppose a motion for stay of execution. . . until a judgment is entered by the district court in that case or, in the event of an appeal, a motion for stay of execution filed under the relevant case number in the Sixth Circuit until an opinion is issued by a panel of the Sixth Circuit. If such a motion for stay is denied, Defendants also agree to advocate for another reprieve from the Governor until a judgment is entered by the district court or, in the event an appeal, an opinion has been issued by a panel of the Sixth Circuit." (Doc. 219-3, PageID#: 12746).

98.     On April 1, 2025, after the filing of an unopposed motion pursuant to the Agreement, a Court in this District granted a stay in *Middlebrooks v. Strada, et al.*, No. 3:19-cv-01139 (M.D. Tenn.). *See* **Exh. 4**.

99.     Additionally, the Plaintiff has not been provided an unredacted copy of the revised protocol while similarly situated persons in this District, in Nashville,

Davidson County, Tennessee in the custody of TDOC have been provided an unredacted copy of the revised protocol.

100. As a similarly situated person to the Plaintiff Middlebrooks, the Plaintiff is being denied equal protection of the laws by State actors.

101. The Plaintiff is entitled to due process and equal protection of the laws and is thus entitled to the same Agreement and access to the revised protocol as the plaintiffs in *King v. Strada, et al.*, No. 3:18-cv-01234 (M.D. Tenn.) and *Middlebrooks v. Strada, et al.*, No. 3:19-cv-01139 (M.D. Tenn.).

102. Specifically, this Court should order the Defendants to enter into an agreement with the Plaintiff to "not oppose a motion for stay of execution. . . until a judgment is entered by the district court in that case or, in the event of an appeal, a motion for stay of execution filed under the relevant case number in the Sixth Circuit until an opinion is issued by a panel of the Sixth Circuit. If such a motion for stay is denied, Defendants also agree to advocate for another reprieve from the Governor until a judgment is entered by the district court or, in the event an appeal, an opinion has been issued by a panel of the Sixth Circuit." (Doc. 219-3, PageID#: 12746).

103. In the alternative, the Defendants should be temporarily enjoined from executing the Plaintiff until the resolution of the legal challenges to Tennessee's revised lethal injection protocol in *King v. Strada, et al.*, No. 3:18-cv-01234 (M.D. Tenn.), *Middlebrooks v. Strada, et al.*, No. 3:19-cv-01139 (M.D. Tenn.), and this challenge.

31

104.    The Plaintiff has a strong likelihood of success on the merits of his equal protection claims. Specifically, the fact that some, but not all, of the death-sentenced prisoners in this District in Nashville, Davidson County, Tennessee, and in the custody of TDOC will receive execution dates and/or be executed, while others will benefit from an agreement with the Defendants that prevents their execution until their challenge to the revised lethal injection protocol is complete violates the Due Process Clause of the Fifth Amendment and the Due Process and Equal Protection Clauses of the Fourteenth Amendment, and Article I of the Tennessee Constitution.

105.    The Plaintiff is currently being denied equal protection of the law and will suffer irreparable injury in the form of his unconstitutional execution absent an injunction or other relief.

106.    An injunction will not cause substantial harm to the Defendants because the Defendants have already agreed to the relief requested here for the plaintiffs in *King v. Strada, et al.*, No. 3:18-cv-01234 (M.D. Tenn.) and *Middlebrooks v. Strada, et al.*, No. 3:19-cv-01139 (M.D. Tenn.).

107.    Additionally, the public interest would be served by granting the Plaintiff the equal protection of the laws or, alternatively, by issuing an injunction against his execution.

108.    According to Governor Lee, "the death penalty is a serious matter," and should "leave no question that procedures are correctly followed." *See* **Exh. 2**. Because of the grave constitutional concerns over Tennessee's revised lethal injection protocol,

the history of error and malfeasance of TDOC, and the concern expressed by Governor Lee in the lethal injection process as implemented in Tennessee, relief is warranted.

## Count II:

**Injunction under 28 U.S.C. §§ 2201–02 for violations of the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution and Article I of the Tennessee Constitution**

109.   The execution of the Plaintiff by Tennessee's revised lethal injection protocol while legal challenges to the protocol are pending violates due process and constitutes cruel and unusual punishment under the United States Constitution and Article I of the Tennessee Constitution.

110.   Because of their history of error and malfeasance regarding the administration of Tennessee's lethal injection protocol, the Defendants should be temporarily enjoined from executing the Plaintiff until the Court is confident in the ability of the Defendants to carry out an execution that complies with the United States and Tennessee Constitutions in the form of the resolution of legal challenges to Tennessee's revised lethal injection protocol in *King v. Strada, et al.*, No. 3:18-cv-01234 (M.D. Tenn.), *Middlebrooks v. Strada, et al.*, No. 3:19-cv-01139 (M.D. Tenn.), and this challenge.

111.   The Plaintiff has a strong likelihood of success on the merits of his claims because of the Defendant's history of error and malfeasance in administration of previous protocol, because of the vagueness of the protocol, and because the use of pentobarbital creates a sure or very likely risk of severe pain and needless suffering.

33

112.    Even if the likelihood of success on the merits is low, there is strong evidence of the irreparable harm that the Plaintiff will face in the form of his unconstitutional execution.

113.    An injunction will not cause substantial harm to the Defendants because the Defendants have already agreed to the relief requested here for the plaintiffs in *King v. Strada, et al.*, No. 3:18-cv-01234 (M.D. Tenn.) and *Middlebrooks v. Strada, et al.*, No. 3:19-cv-01139 (M.D. Tenn.).

114.    Additionally, the public interest would be served by issuing an injunction against the Plaintiff's execution until the legal challenges to the revised lethal injection protocol are concluded.

115.    According to Governor Lee, "the death penalty is a serious matter," and should "leave no question that procedures are correctly followed." *See* **Exh. 2.** Because of the grave constitutional concerns over Tennessee's lethal injection protocol, the history of error and malfeasance of TDOC, and the concern expressed by Governor Lee in the lethal injection process as implemented in Tennessee, relief is warranted.

## Count III:

**Tennessee's Revised Lethal Injection Protocol is unconstitutional under the Eighth Amendment to the United States Constitution, 42 U.S.C. § 1983, and Article I of the Tennessee Constitution**

116.    Tennessee's lethal injection protocol is unconstitutional because the infliction of any punishment that causes a substantial and unjustifiable risk of serious pain and needless suffering is cruel and unusual punishment under the original meaning of the Eighth Amendment.

34

117.    Lethal injection is a form of poisoning the human body. Execution by poisoning was not a method of execution contemplated by the Framers of the United States Constitution or the Tennessee Constitution. The Framers would have considered execution by poisoning to be unusual in that it was not recognized as an execution method and cruel because poisoning was considered a barbarous act. The Framers of the Tennessee Constitution would have also considered execution by poisoning to be a barbarous act. The first execution by poisoning occurred in the United State more than two centuries after the founding of this country and well more than a century after Tennessee accepted the governance of the Union.

118.    The drafters of the Eighth Amendment adopted its text directly from the English Bill of Rights of 1689. The prohibition contained in the English Bill of Rights was not limited by its text to any specific punishment existing either at the time of, or prior to its adoption.

119.    The United States Supreme Court acknowledges the relevance of acceptable methods of execution at the time of the founding of the country.  Evolving standards of decency do not permit the adoption of a method of execution considered barbarous at the founding of our country. Execution by poisoning is unconstitutional because it was not a method of execution at the founding of our country or when Tennessee joined the Union. Execution by poisoning violates the Eighth Amendment to the United States Constitution, 42 U.S.C. § 1983, and Article I of the Tennessee Constitution.

120.     The injection of pentobarbital causes flash (acute) pulmonary edema creating a drowning sensation akin to waterboarding. The drowning sensation is "one of the most powerful, excruciating feelings known to man." *See* **Exh. 7** at 14. Waterboarding is almost assuredly a form of torture.

121.     A 2022 study found lung edema in 10 of 15 individuals executed by a protocol involving pentobarbital, evidenced by the "presence of froth, frothy fluid or blood-tinged froth located in the tracheobronchial tree. . . or fluid in lung parenchyma or small airways." *See* **Exh. 7** at 12.

122.     The presence of froth in airways "requires breathing to create froth, so the timing of pulmonary edema must, [by] definition, occur prior to the administration of a paralyzing agent or heart stopping medication." *See* **Exh. 7** at 12.

123.     Additionally, the typical weight of a person's lungs after immediate death should be approximately 234 grams. But in the autopsies conducted after execution by pentobarbital, "lung weights observed . . . were all above 400 grams (average wights for right and left lungs, respectively, in . . . pentobarbital executions were 723 grams and 631 grams)." *See* **Exh. 7** at 12. And an autopsy of Wesley Purkey's body after his federal execution found that his right lung weighed 1140 grams and his left lung weighed 1160 grams—or five times the average. *See* **Exh. 7** at 13.

124.     According to a separate report from National Public Radio, in state executions where pentobarbital was used, 47 of 58 autopsies contained lung edema.

*See Gasping for Air: Autopsies Reveal Troubling Effects of Lethal Injection*, NPR (Sept. 21, 2020), attached as **Exhibit 8**.

125. The administration of pentobarbital can also "cause extreme pain upon [] injection," and can "damage the veins in the body, causing the drug to leak into the surrounding tissues," causing "significant excruciating pain." *See* **Exh. 7** at 14–15.

126. The Defendants are aware of the substantial risk of harm to the Plaintiff by using pentobarbital, are responding inadequately or recklessly to the risk of harm, and are thus deliberately indifferent to the risk of harm to the Plaintiff.

127. As a result of these and other failures, the use of pentobarbital creates a substantial and unjustifiable risk of serious pain and needless suffering and constitutes cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

## Count IV:

**Tennessee's Revised Lethal Injection Protocol *as applied*
to the Plaintiff is unconstitutional under the Eighth
Amendment to the United States Constitution and Article
I of the Tennessee Constitution**

128. Even if the revised protocol is found to be constitutional as written, it is unconstitutional in the way that it will be applied to the Plaintiff.

129. The Plaintiff's individual physical characteristics that include, but are not limited to his advanced age, lung disease and scarring, obesity, fatty deposits on his liver, cholecystitis, and Type 2 diabetes make it sure or very likely that there is a substantial risk that he will experience unnecessary and serious pain and needless

37

suffering of the type alleged throughout this complaint if subjected to execution by the revised protocol.

130. The Defendants' revised protocol fails to account for any unique physical characteristics of the Plaintiff that may affect the efficacy of, or the risk of harm caused by the revised protocol.

131. The Defendants' revised protocol also fails to account for any unique psychological or mental characteristics of the Plaintiff that may affect the efficacy of, or the risk of harm caused by the revised protocol.

132. The Defendants and their agents and assigns, including but not limited to, the execution team, have not properly prepared or trained for any of the unique challenges that the Plaintiff's individual characteristics may present while carrying out his execution.

133. Because the Defendants do not account for any individual characteristics that the Plaintiff currently possesses or may develop before his scheduled execution, the substantial and unjustifiable risk of serious pain and needless suffering is sure or very likely.

134. The Defendants' lack of training and lack of appropriate qualifications to carry out lethal injections in Tennessee are sure or very likely to cause the Plaintiff a substantial and unjustifiable risk of serious pain and needless suffering.

135. Specifically, the Defendants by their own acts or through the acts of their agents and assigns, lack the qualifications or training to complete the following non-exhaustive list of tasks:

    a. to adequately procure the lethal injection chemicals from a legitimate source;

    b. to transport the chemicals;

    c. to properly store the chemicals;

    d. to determine expiration dates for the chemicals;

    e. to set the IV lines;

    f. to set the leads on the heart monitor;

    g. to fill the syringes;

    h. to administer the injections;

    i. to determine whether there are deficiencies, visually apparent or otherwise, in the lethal injection chemicals; or

    j. to determine death.

136. The Defendants' history of error, negligence, and malfeasance in carrying out lethal injections in Tennessee is sure or very likely to cause the Plaintiff a substantial and unjustifiable risk of serious pain and needless suffering.

137. The Defendants' revised protocol does not address the deficiencies identified in the Independent Review to remediate the risk of a botched execution and this failure creates a substantial and unjustifiable risk of serious pain and needless suffering.

## Count V:

**Tennessee's Revised Lethal Injection Protocol violates the First Amendment to the United States Constitution, Article I of the Tennessee Constitution, the Religious Freedom Restoration Act of 1993 (RFRA), the Tennessee Preservation of Religious Freedom Act, and the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA)**

138.   Under the revised protocol, clergy are not allowed to be in the execution chamber with the Plaintiff when he is executed. The Defendants' revised protocol substantially burdens the Plaintiff's sincerely held religious beliefs.

139.   The Plaintiff's exercise of religion requires the "laying on of hands" before, during, and after his execution.

140.   The revised protocol's prohibition on clergy in the execution chamber does not further a compelling governmental interest, nor is it the least restrictive means of furthering a compelling governmental interest should one exist.

141.   Additionally, the revised protocol's prohibition on clergy in the execution chamber places a substantial burden on the Plaintiff's religious exercise, treats him unequally compared to other death-sentenced prisoners, discriminates against his exercise of religion and sincerely held religious beliefs, and creates an unreasonable limitation on his exercise of religion and sincerely held religious beliefs.

142.   Furthermore, the requirement that the Plaintiff choose an alternative method for the Defendants to execute him violates his right to conscience and/or to the free exercise of religion under the First Amendment of the United States Constitution, Article I of the Tennessee Constitution, the Religious Freedom

40

Restoration Act of 1993 (RFRA), the Tennessee Preservation of Religious Freed Act codified at Tennessee Code Annotated § 4-1-407, and the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA).

143.    Specifically, the Plaintiff's sincerely held religious beliefs prevent him from participating in any process that leads to his own death.

144.    The requirement to plead an alternative violates the Plaintiff's religious exercise, treats him unequally compared to other prisoners, discriminates against his exercise of religion and sincerely held religious beliefs, and creates an unreasonable limitation on his exercise of religion and sincerely held religious beliefs.

145.    The prohibition on clergy in the execution chamber violates the Plaintiff's rights under the First Amendment of the United States Constitution, Article I of the Tennessee Constitution, the Religious Freedom Restoration Act of 1993 (RFRA), the Tennessee Preservation of Religious Freed Act codified at Tennessee Code Annotated § 4-1-407, and the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA).

### Count VI:

**Tennessee's Revised Lethal Injection Protocol's "12-hour blackout policy" violates the Free Speech and Free Exercises Clauses of the First Amendment, and the Fifth Amendment to the United States Constitution, Article I of the Tennessee Constitution, and the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA)**

146.    The revised protocol as written imposes restrictions on the right of an individual to communicate with the outside world during the final 12 hours prior to his or her scheduled execution.

41

147. Specifically, according to the blackout policy, the warden must "ensure noncontact visits and phone calls—excluding visits and calls from the inmate's attorney of record—are concluded" before commencement of the blackout period "unless expressly approved by the **REDACTED**."

148. The revised protocol does not state when, how, or if the unknown individual may use their discretion to allow or forbid additional communications.

149. TDOC regularly monitors the non-legal telephone conversations of individuals in its custody.

150. The revised protocol calls for a prisoner to be continuously surveilled and held incommunicado for the final days of their life.

151. As a result, there is no meaningful risk that a prisoner facing execution would use their telephone access to coordinate any action that would disrupt the Defendants' performance of their duties.

152. Because the prisoner is held incommunicado until their execution, the blackout policy as written constitutes a restriction on the individual's liberty and ability to communicate for the remainder of their life.

153. The imposition of such an absolute bar on communications, subject to arbitrary exceptions made by unknown State actors shocks the conscious and violates the right of an individual facing an execution to engage in protected speech.

154. Additionally, because the blackout policy as written contains no exception for religious communication, including prayer and other sacramental

42

communications with religious or spiritual advisors, the policy violates the prisoner's right to freely exercise their religion.

155. The revised protocol's blackout policy as written substantially burdens the prisoner's rights at a time of extraordinary importance.

156. There is little, if any, plausible governmental interest or policy rational for the burden on the prisoner's rights.

157. Furthermore, there is no legitimate basis or governmental interest in placing exceptions to the blackout policy within the wholly unbound discretion of the unknown individual.

158. The revised protocol's blackout policy as written also substantially burdens the prisoner's right to communicate spiritual matters with clergy or other spiritual advisors.

159. There is no legitimate governmental interest in burdening the prisoner's rights to the free exercise of their religion.

160. Nor is the policy narrowly tailored to serve any governmental interest should one exist.

## Count VII:

**Tennessee's Revised Lethal Injection Protocol's restrictions on the role of clergy violates the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, Article I of the Tennessee Constitution, and the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA)**

161. Prisoners, including the Plaintiff here, retain their right to the free exercise of religion while in the custody of TDOC.

43

162.   Rather than incorporate the terms "priest, minister, or spiritual advisor" from the previous protocol, the revised protocol, without explanation or rationale, replaces those terms with the more limited term, "clergy."

163.   Upon information and belief, the Defendants' decision to discard the term "spiritual advisor" in favor of a term that connotes a narrower conception of religious leadership is an effort to exclude religious beliefs and traditions that either do not practice formal ordination or that recognize important leadership and ministering roles by nonordained adherents.

164.   The limitation operates together with the Defendants' sole discretion to approve or deny "clergy," setting the Defendants up as the sole arbiter of which religions, leaders, beliefs, advisors, and traditions are worthy of recognition.

165.   The revised protocol also imposes a specific set of requirements on clergy, making those restrictions neither neutral nor generally applicable. Those requirements fail under the tests for both generally applicable and non-generally applicable laws.

166.   Such arbitrary distinctions and discrimination unduly burden the Plaintiff's right to the free exercise of his religion.

167.   The Plaintiff has a right to physical proximity and physical contact, including the "laying on of hands," with his spiritual advisor.

168.   The revised protocol relegates "clergy" to sitting with other witnesses, physically separated from the prisoner to be executed, and unable to be heard by them during their execution.

44

169. The Plaintiff's exercise of religion requires the "laying on of hands" before, during, and after his execution.

170. To the extent that the Plaintiff has asserted a desire to have a specific spiritual advisor present and that spiritual advisor becomes unavailable, the Plaintiff intends and expects to select an alternative spiritual advisor.

171. The Defendants' restriction substantially burdens the Plaintiff's right to free exercise and there is no legitimate government interest in such a burden.

172. Nor is the restriction narrowly tailored to serve any governmental interests should one exist.

173. The revised protocol's written restriction on the participation of spiritual advisors is unlawful. Furthermore, the revised protocol's refusal to recognize spiritual advisors who are not clergy reflects discrimination between religious traditions and is unconstitutional.

174. The Defendants' sole discretion to approve or reject spiritual advisors is likewise unconstitutional.

## Count VIII:

**Tennessee's Revised Lethal Injection Protocol violates the Plaintiff's rights to petition for redress under the First, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I of the Tennessee Constitution**

175. The Plaintiff's right to access the courts flows from the First, Eighth, and Fourteenth Amendments to the United States Constitution and Article I of the Tennessee Constitution.

45

176. Specifically, the Fourteenth Amendment incorporates the First and Eighth Amendments' guarantees against the states and requires that states take certain affirmative steps to protect a prisoner's access to the courts.

177. The Plaintiff has a constitutional right to seek redress by asserting any rights that he believes violate the Eighth Amendment. The Plaintiff may assert these rights up until and during his execution.

178. In some instances, the right against cruel and unusual punishment may not arise until the actual day, hour, or time of execution.

179. The revised protocol as written makes no provision for the Plaintiff's counsel to gain immediate access to a telephone before and during the execution so that they may contact the courts in order to protect the Plaintiff's right against cruel and unusual punishment.

180. Specifically, the protocol tasks the Special Operations Team with confirming that phones in the execution chamber are operational but makes no provision for counsel access or the responsibility of any of the Defendants to make sure other phones are operational.

181. Nor does the revised protocol make exception to RMSI's visitation policy to allow attorney-witnesses to bring a cellphone with them to the witness room.

182. The restrictions violate the Plaintiff's constitutional rights to life and liberty, to be free from cruel and unusual punishments, and shocks the conscious.

46

183. Specifically, the Plaintiff's right of access to the courts includes and encompasses counsel's right to access a telephone before, during, or after the Plaintiff's execution.

184. Additionally, the revised protocol substantially limits counsel's access to and/or the witnessing of key parts of the execution process, forestalling counsel's ability to access the courts to protect the Plaintiff's constitutional rights.

185. Specifically, the revised protocol prohibits counsel from witnessing the Defendants' securing the Plaintiff to the execution gurney and when and how the physician confirms the Plaintiff's death. Because of heavy redactions to the revised protocol provided to counsel for the Plaintiff, counsel may be prohibited from witnessing other, currently unknown, procedures. The Plaintiff reserves the right to amend this Complaint to allege further unconstitutional hinderances.

186. Likewise, the revised protocol only calls for the blinds to be reopened if the prisoner is not deceased but does not specify how long the Defendants may wait before reopening the blinds or how the physician will conduct their "death check."

187. The revised protocol's reference to overhead cameras, an audio system, and closed-circuit TV are similarly vague and do not allow counsel proper access to or witness of the execution process to ensure that the Plaintiff's constitutional rights are protected.

188. Any number of constitutional violations can and may occur in that time. The Defendants' history of error and malfeasance during the lethal injection process is proof that constitutional violations do occur during that time.

47

189. The Plaintiff's individual physical characteristics that include, but are not limited to his advanced age, lung disease and scarring, obesity, fatty deposits on his liver, cholecystitis, and Type 2 diabetes make access to and witness of the pre-execution procedures of vital importance.

190. Upon information and belief, the Defendants and their agents and assigns including, but not limited to, the execution team, have not properly prepared or trained for any of the unique challenges that the Plaintiff's individual characteristics may present while carrying out his execution.

191. Additionally, any unilateral changes to the revised protocol by the Commissioner denies the Plaintiff his right to due process.

192. These restrictions substantially burden the Plaintiff's constitutional rights and serve no legitimate governmental interest.

193. Nor are the restrictions narrowly tailored to serve any governmental interest should one exist.

## Count IX:

**Requiring selection of execution by electrocution violates the Plaintiff's rights under the First, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. Execution by electrocution constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution**

194. Tennessee's ostensible option of execution by electrocution does not ameliorate the Plaintiff's concerns.

195. The revised protocol requires a prisoner to return an affidavit stating his "choice" of execution method and the waiving of certain rights.

48

196.    As averred *supra* in **Section II**, requiring the Plaintiff to plead an alternative violates his rights under the First, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

197.    Tennessee's selection method operates in the same way and is likewise a violation of the Plaintiff's constitutional rights.

198.    Upon information and belief, if the Plaintiff "chooses" to be executed by electrocution, the Defendants' will treat the Plaintiff as having waived his right to raise any issues related to the polices, practices, or equipment used by the Defendants in executing the Plaintiff.

199.    Furthermore, the revised protocol requires the Plaintiff to select his method of execution thirty days prior to his scheduled execution. However, the Tennessee Supreme Court's Order requires the Warden of RMSI to notify the Plaintiff by November 26, 2025 of the method of execution. *See* **Exh. 6**. The revised protocol permits the Plaintiff fourteen days to withdraw his waiver.

200.    Fourteen days before the Plaintiff's execution is November 27, 2025—the Thanksgiving Holiday, giving the Plaintiff one day to decide how the Defendants should execute him. The revised protocol does not address the mechanics of the Plaintiff withdrawing his waiver, especially when the deadline falls on a state holiday.

201.    This policy violates the Plaintiff's rights under the First, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and Article I of the Tennessee Constitution.

49

202.   In other words, the revised protocol requires the Plaintiff to elect his method of execution before he is aware whether the Defendants have the pentobarbital to execute him; before he is aware of whether the pentobarbital has expired; and before he is aware of whether the pentobarbital has been tested in violation of his due process rights.

203.   Additionally, execution by electrocution violates the Eighth Amendment because, like poisoning, it was not an accepted form of execution at the time of the adoption of the Eighth Amendment and is not closely analogous to any accepted form of execution at the time of the adoption of the Eighth Amendment to the United States Constitution.

204.   Nor is execution by electrocution consistent with modern, evolving standards of decency.

205.   Upon information and belief, execution by electrocution poses an intolerable risk of severe pain and needless suffering in violation of the Eighth Amendment to the United States Constitution.

206.   Additionally, the revised protocol makes no provision for the maintenance and testing of the electric chair. Accordingly, use of the electric chair will inflict severe pain, mental anguish, and needless suffering on any person executed by electrocution in Tennessee.

207.   If an electric chair exists that can bring about quick and unconscious death, such a chair is not possessed by Tennessee.

50

208. Specifically, Tennessee's electric chair was designed and installed more than three decades ago by Fred A. Leuchter, an unlicensed manufacturer of execution equipment and Holocaust denier who is best known for promoting a theory that there were no gas chambers at Auschwitz-Birkenau.

209. The current electric chair used by Tennessee incorporates wood from the original chair, which itself was taken from the gallows used by the state in lynching executions.

210. Accordingly, forcing the prisoner to "choose" electrocution violates the Plaintiff's rights under the First, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. Execution by electrocution constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.

## Count X:

**Tennessee's Secrecy Law violates the First Amendment, the Due Process Clauses of the Fifth and Fourteenth Amendments, and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Article I of the Tennessee Constitution, and Tennessee Code Annotated § 10-7-501 *et seq.***

211. The Defendants have concealed and secreted-away many of the details of the revised lethal injection protocol and have only provided a heavily redacted version to counsel for the Plaintiff.

212. The Defendants' heavy redactions of the revised protocol will substantially, if not entirely, impair the Plaintiff's ability to raise and prove the allegations and claims of his case.

51

213. The Defendants' refusal to provide counsel for the Plaintiff anything but a heavily redacted protocol violates the Plaintiff's right to equal protection.

214. Specifically, the Defendants have provided similarly situated prisoners residing in this District, in Nashville, Davidson County, Tennessee with an unredacted copy of the revised protocol.

215. Additionally, the revised protocol is intentionally vague and hides the identities and locations of key individuals involved in the process. For example:

    a. The revised protocol does not state the source of the supplier, the procurement process—whether legitimate or through the gray or black market, or whether the pentobarbital is compounded or manufactured.

    b. The revised protocol makes vague reference to quality assurance and quality control testing, but the Plaintiff is deliberately and unconstitutionally made unaware of the specific testing and regulatory requirements that the Defendants are subject to in their handling and administration of pentobarbital for lethal injection.

    c. Likewise, the revised protocol vaguely references that the Defendants will follow recommended guidelines for safe transportation and storage of the pentobarbital. However, without information on whether the pentobarbital is compounded or manufactured, the source of the pentobarbital, and the specific

52

regulations that apply to it, the Plaintiff is not able to sufficiently challenge the revised protocol.

    d.  The selection criteria for the members of the execution team are vague, subjective, and secretive.

    e.  The selection criteria for specially trained non-department personnel are vague, subjective, and secretive.

    f.  The revised protocol does not state whether "cut-down" or other procedures that may be needed as problems arise are prohibited or allowed. The protocol instead makes vague reference to a "central line."

216.   Combined, the Defendants' revised protocol shocks the conscience and violates the Plaintiff's right to due process.

217.   As a result of these deficiencies and the Defendants' redactions, the Plaintiff is deliberately and unconstitutionally made unaware of the manner in which the Defendants intend to execute him.

218.   Furthermore, Tennessee's adoption of the execution secrecy provisions in Tennessee Code Annotated § 10-7-504(h) violates the Plaintiff's right to due process.

219.   Specifically, the Defendants' overly broad interpretation of the secrecy provisions in Tennessee Code Annotated § 10-7-504(h) violates the plain language of the statute.

220. In his review of Arizona's lethal injection protocol, the Honorable David K. Duncan (ret.) concluded that the "absence of transparency . . . is endemic in the application of the death penalty"; and that the "black hood that covered the head of the person carrying out the execution has grown to a cement silo that shields nearly all aspects of execution procedures. It is this siloed environment that breeds the errors and flawed practices that hobble lethal injections." *See* Independent Death Penalty Review by Hon. David Duncan (ret.), Commissioner, attached as **Exhibit 9**.

221. The vagueness of the revised protocol makes any challenge prohibitive and violates the Plaintiff's right to due process under the Fifth and Fourteenth Amendments to the United States Constitution and Article I of the Tennessee Constitution.

## Count XI:

**Tennessee's Revised Lethal Injection Protocol violates the Tennessee Uniform Administrative Procedures Act, the Fifth and Fourteenth Amendments to the United States Constitution, and Article I of the Tennessee Constitution**

222. TDOC intentionally avoided compliance with Tennessee's Uniform Administrative Procedures Act to promulgate the revised lethal injection protocol.

223. Although TDOC is given broad authority to promulgate rules and regulations under Tennessee Code Annotated § 40-23-114 to "facilitate the implementation of this section," the process by which the agency does so is governed by the Tennessee Uniform Administrative Procedures Act.

224. Specifically, the statute authorizes TDOC to create "rules and regulations."

54

225. The Legislature's intentional use of rules and regulations, which explicitly connote administrative rulemaking, signal the Legislature's intent that the protocol be devised in the same way.

226. The Tennessee Uniform Administrative Procedures Act requires:

      g.  notice and publication of rulemaking[33];

      h.  a hearing on proposed rules[34];

      i.  consideration of public comments[35];

      j.  a written statement of the agency's rationale[36]; and

      k.  declares any rule made in violation of the Act void.[37]

227. Circumventing the administrative rulemaking process is a violation of Tennessee law and deprives the Plaintiff of due process.

228. The Tennessee Uniform Administrative Procedures Act also serves as a check on executive power: rulemaking is subject to review by the Tennessee Attorney General and Reporter for constitutionality[38]. The Attorney General and Reporter is appointed by the Tennessee Supreme Court.

---

[33] Tenn. Code Ann. § 4-5-202(a), (c).

[34] Tenn. Code An. §§ 4-5-202(a), 4-5-204.

[35] Tenn. Code Ann. § 4-5-205(a).

[36] Tenn. Code Ann. § 4-5-205(a).

[37] Tenn. Code Ann. § 4-5-216.

[38] Tenn. Code Ann. § 4-5-211.

55

229. The revised protocol also gives unchecked power to the TDOC Commissioner to deviate from the protocol "when deemed necessary to effectuate the purpose" of the protocol. Such broad discretion is a violation of the Tennessee Uniform Administrative Procedures Act and a violation of the Plaintiff's right to due process.

230. The promulgation of a lethal injection protocol without following the constitutional procedures outlined in the Tennessee Uniform Administrative Procedures Act also violates due process.

## **Prayer for Relief**

Accordingly, the Plaintiff requests that this Court:

A.     Apply equal protection of the laws and order the Defendants to enter into a similar agreement with the Plaintiff here, as they entered with the plaintiffs in *King v. Strada, et al.*, No. 3:18-cv-01234 (M.D. Tenn.) and *Middlebrooks v. Strada, et al.*, No. 3:19-cv-01139 (M.D. Tenn.);

B.     In the alternative, this Court should declare that the Agreement violates the Plaintiff's rights to equal protection and issue a temporary injunction preventing the Defendants from executing the Plaintiff prior to the completion of the litigation in *King v. Strada, et al.*, No. 3:18-cv-01234 (M.D. Tenn.), *Middlebrooks v. Strada, et al.*, No. 3:19-cv-01139 (M.D. Tenn.), and this challenge;

C.     Declare that Tennessee's revised lethal injection protocol is unconstitutional under Tennessee Code Annotated § 29-14-101 *et seq.*, Tennessee Code Annotated § 4-5-101 *et seq.*, and Article I, §§ 2, 3, 8, 16, 17 of the Tennessee Constitution, Article VI, § 2 of the United States Constitution, and the First, Fifth,

56

Eighth, and Fourteenth Amendments to the United States Constitution and issue a permanent injunction against use of the revised lethal injection protocol;

D.     Declare that any attempt by the Defendants to carry out the Plaintiff's execution using the revised lethal injection protocol violates 42 U.S.C § 1983 and issue a permanent injunction against use of the revised lethal injection protocol;

E.     Declare that the revised lethal injection protocol on its face and as applied to the Plaintiff is unconstitutional or null and void under Tennessee Code Annotated § 29-14-101 *et seq.*, Tennessee Code Annotated § 4-5-101 *et seq.*, and Article I, §§ 2, 3, 8, 16, 17 of the Tennessee Constitution, Article VI, § 2 of the United States Constitution, and the First, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and issue a permanent injunction against use of the revised lethal injection protocol;

F.     Declare that the revised lethal injection protocol, as applied to the Plaintiff, is cruel and unusual punishment under the Eighth Amendment and issue a permanent injunction against use of the revised lethal injection protocol;

G.     Declare and order the revised lethal injection protocol void because it was made in violation of the Tennessee Uniform Administrative Procedures Act;

H.     Declare that the revised protocol violates the First Amendment to the United States Constitution, Article I of the Tennessee Constitution, the Religious Freedom Restoration Act of 1993 (RFRA), the Tennessee Preservation of Religious Freedom Act, and the Religious Land Use and Institutionalized Persons Act of 2000

57

(RLUIPA) and issue a permanent injunction against use of the revised lethal injection protocol;

I.  Declare that Tennessee's secrecy laws and redacted protocol violate the First Amendment to the United States Constitution and the Plaintiff's rights to due process and issue a permanent injunction against use of the revised lethal injection protocol; or

J.  Order an expedited Rule 26(f) conference and an expedited Rule 16(b) conference and set this matter for trial; and

K.  Any other relief warranted in the Court's discretion.


Respectfully submitted,

FEDERAL DEFENDER SERVICES
OF EASTERN TENNESSEE, INC.

By: /s/ *Luke P. Ihnen*
   Stephen A. Ferrell, TN BPR No. 025170
   Susanne Bales, TN BPR No. 017868
   Luke P. Ihnen, TN BPR No. 035190
   800 S. Gay Street, Suite 2400
   Knoxville, TN 37929
   Phone: (865) 637-7979
   Fax: (865) 637-7999
   Stephen_Ferrell@fd.org
   Susanne_Bales@fd.org
   Luke_Ihnen@fd.org