# Exhibit 2

IN THE CHANCERY COURT FOR KNOX COUNTY, TENNESSEE

Megan Kerrigan,

Petitioner,

v.

Patrick Newport, Senior Associate Counsel, Tennessee Department of Correction, in his official capacity:[1]

6th Floor Rachel Jackson Building,
320 5th Avenue, North,
Nashville, TN 37243,

Respondent.

No. 212096-1

FILED CHANCERY COURT 2025 OCT 27 PM 1:22 J. SCOTT GRISWOLD

**Petition for Hearing on Public Record Request Denials and Access to Public Records**

The Petitioner, Megan Kerrigan, petitions this Court for judicial review of the denials of her public records requests by the Tennessee Department of Correction (TDOC), for access to the requested records, and for declaratory or injunctive relief consistent with this Court's authority mandating future compliance with the

---

[1] Tennessee Code Annotated § 10-7-505(a) requires "the official and/or designee of the official" be named as the defendant in this lawsuit. *See Kersey v. Jones*, 2007 Tenn. App. LEXIS 462, at *17–*18 (Tenn. Ct. App. July 23, 2007) ("Clearly the General Assembly contemplated that custodians of records who failed to comply with the Public Records Act would be named as defendants in the event of a lawsuit. . . We find support for this proposition in the number of cases filed under the Public Records Act against individuals in their official capacities, rather than against a governmental entity." (listing cases)). However, the Petitioner is not seeking any relief against Mr. Newport individually.

Tennessee Public Records Act (TPRA) under Tennessee Code Annotated §§ 10-7-503 and 505. For support, the Petitioner shows:

## Introduction

> The "absence of transparency . . . is endemic in the application of the death penalty". The "black hood that covered the head of the person carrying out the execution has grown to a cement silo that shields nearly all aspects of execution procedures. It is this siloed environment that breeds the errors and flawed practices that hobble lethal injections."
>
> – Independent Death Penalty Review (Arizona) by Hon. David Duncan (ret.), Commissioner

Executions, once performed in the public square, were moved behind prison walls in the nineteenth century. The goal was twofold: to avoid a gruesome spectacle and to protect the dignity of all involved—including the prisoner. As execution methods advanced and procedures became more secretive, the need for public information and scrutiny became greater. Nevertheless, states and prison officials sought even more secrecy. Once lethal injection became the most common method of execution (originally thought to be more humane), the number of botched executions began to rise. In 2011, to combat bad press over botched executions, and to blunt the momentum of abolition advocates, states began enacting secrecy statutes to shield certain information about how lethal injection drugs were procured from and by whom, how often, and for how much. Tennessee followed suit and enacted its own execution secrecy law aimed at protecting the identity of individuals involved in the execution process. Tenn. Code Ann. § 10-7-504(h)(1).

But TDOC officials use the law not only to shield the identity of those involved in executions, but also to prohibit the disclosure of *any* information regarding

Tennessee's lethal injection process. That runs counter to the "presumption of openness" and the "clear legislative mandate favoring disclosure of governmental records" in the TPRA. *Schneider v. City of Jackson*, 226 S.W.2d 332, 340 (Tenn. 2007). And it runs counter to the plain language of the execution secrecy statute itself: "nothing in this subsection (h) shall be used to limit or deny access to otherwise public information because a file, a document, or data file contains confidential information." Tenn. Code Ann. § 10-7-504(h)(2).

"An informed public is the most potent of all restraints upon misgovernment. They alone can here protect the values of democratic government." *Detroit Free Press v. Ashcroft*, 303 F.3d 681, 683 (6th Cir. 2002). Relief is warranted.

## <u>Parties</u>

1. The Petitioner Megan Kerrigan is a citizen of the State of Tennessee and a resident of Knox County, Tennessee. The Petitioner submitted her TPRA requests in her capacity as an investigator with the Federal Defender Servies of Eastern Tennessee, Inc. (FDSET) in Knox County, Tennessee. FDSET is a nonprofit public benefit corporation incorporated in the State of Tennessee. FDSET was incorporated as a Community Defender Organization—a nonprofit defense counsel service—established by the Criminal Justice Act Plan for the United States District Court for the Eastern District of Tennessee under 18 U.S.C. § 3006A(g)(2)(B). Under that plan, FDSET is the default counsel appointed in federal capital habeas corpus proceedings brought under 28 U.S.C. § 2254 in the Eastern District of Tennessee. *See* CJA Plan,

Part XIV, Section F(3), p. 35. The Petitioner's requests under the TPRA have been denied in whole or in part by the Respondent.[2]

2. The Respondent Patrick Newport is Senior Associate Counsel at TDOC, the Tennessee agency responsible for the housing and supervision of death row prisoners committed into state custody located in Nashville, Davidson County, Tennessee. Mr. Newport is sued in his official capacity and is subject to the TPRA under Tennessee Code Annotated § 10-7-505(a) because he is "the official and/or designee of the official" of the records sought here. *See Kersey v. Jones*, 2007 Tenn. App. LEXIS 462, at *17–*18 (Tenn. Ct. App. July 23, 2007). The Respondent Newport, as an agent or designee of TDOC, willfully denied the records sought in this action in whole or in part. The Petitioner Kerrigan is not seeking relief against the Respondent Newport in his individual capacity and avers that TDOC is a proper defendant because of its institutional policy of denying TPRA requests seeking information related to the revised lethal injection protocol.

## Jurisdiction and Venue

3. This Court has jurisdiction under Tennessee Code Annotated § 10-7-505(b) because it is a chancery court in the Petitioner's county of residence.

4. Venue is proper in this Court because the Petitioner requested records in Knox County, Tennessee. Tenn. Code Ann. § 10-7-505(b).

[2] In her capacity as an investigator with FDSET, the Petitioner is not entitled to attorneys' fees under Tennessee Code Annotated § 10-7-505(g) and does not seek them here. To the extent that FDSET is responsible for court costs, it will seek to recoup them.

## Facts

5. In 2013, the Tennessee General Assembly passed S.B. 154. Act of May 7, 2013, 2013 Tenn. Pub. Acts 314 (an act to amend Tennessee Code Annotated, Title 10 and Title 40). The purpose of the Bill, as explained by then-Senator Mark Norris, was that "involvement in carrying out a death sentence in accordance with a valid court order and in accordance with state law shouldn't subject any person to retaliation by those who may disagree with that law, particularly on this very volatile and sometimes divisive issue. . . What this bill does is to clarify that persons and entities, persons or entities, have the same protections under the . . . exemptions from public disclosure." Hearing on S.B. 154, Before the State and Local Government Comm., 108th Gen. Assembly (Apr. 2, 2013) (statement of Sen. Mark Norris).

6. The execution secrecy law is codified at Tenn. Code Ann. § 10-7-504(h) and provides, in relevant part:

> (1) Notwithstanding any other law to the contrary, those parts of the record identifying an individual or entity as a person or entity who or that has been or may in the future be directly involved in the process of executing a sentence of death shall be treated as confidential and shall not be open to public inspection. For the purposes of this section "person or entity" includes, but is not limited to, an employee of the state who has training related to direct involvement in the process of executing a sentence of death, a contractor or employee of a contractor, a volunteer who has direct involvement in the process of executing a sentence of death, or a person or entity involved in the procurement or provision of chemicals, equipment, supplies and other items for use in carrying out a sentence of death. Records made confidential by this section include, but are not limited to, records related to remuneration to a person or entity in connection with such person's or entity's participation in or preparation for the execution of a sentence of death. . . .
>
> (2) Information made confidential by this subsection (h) shall be redacted wherever possible *and nothing in this subsection (h) shall be*

*used to limit or deny access to otherwise public information because a file, a document, or data file contains confidential information.*

(emphasis added).

7. Two days after Christmas 2024, the State of Tennessee and TDOC announced that it had revised its lethal injection protocol.

8. On March 3, 2025, the Tennessee Supreme Court scheduled execution dates for Oscar Smith (May 22, 2025), Byron Black (August 5, 2025), Donald Middlebrooks (September 24, 2025), and Harold Wayne Nichols (December 11, 2025). Mr. Nichols is a client of FDSET. *See* CJA Plan, Part XIV, Section F(3), p. 35.

9. All of the Petitioner's TPRA requests to TDOC were made to gather information about execution procedures outlined by TDOC in its revised lethal injection protocol prior to the scheduled execution of Oscar Smith, and after the execution of Byron Black. For example, according to the revised lethal injection protocol,[3] inventory of lethal injection drugs will be conducted 30 days before a scheduled execution. The revised lethal injection protocol also outlines procedures

---

[3] Any reference to the contents of the revised lethal injection protocol in this lawsuit are made to the heavily redacted, publicly available copy of the protocol. The unredacted protocol is subject to a protective order in the case *Nichols v. Skrmetti, et al.*, Case No. 3:25-cv-00442, Doc. 45 (M.D. Tenn. Aug. 25, 2025). The Respondent initially refused to release a copy of the redacted protocol to the public, *see* Travis Loller, *Tennessee has a new execution method, 2.5 years after last scheduled execution abruptly halted*, Associated Press, Dec. 27, 2024; Travis Loller and Kimberlee Kruesi, *Tennessee is refusing to release its new execution manual. Here is why it matters*, Associated Press, Jan. 2, 2025; before changing course, *see* Travis Loller and Kimberlee Kruesi, *Tennessee reverses course, releases redacted execution manual with vague details*, Associated Press, Jan. 9, 2025.

beginning and taking place 30 days, 21 days, 14 days, 48 hours, and 12 hours before the execution, as well as procedures on the day of execution.

## I. TPRA Requests Related to Oscar Smith

10. Beginning on May 1, 2025, the Petitioner sent TPRA requests to TDOC requesting information about the lethal injection chemicals procured by TDOC and the records and logs corresponding with deadlines outlined in the revised lethal injection protocol. *See* May 1, 2025 TPRA Request, attached as **Exhibit 1**.[4]

11. On May 6, 2025, TDOC, through the Respondent, determined that it needed until June 6, 2025 to produce the record(s) or information and/or to make a determination of a proper response to that request. *See* May 6, 2025 Newport Response, attached as **Exhibit 2**.

12. The Petitioner made two additional requests to TDOC related to the execution of Oscar Smith: one on May 22, 2025, attached as **Exhibit 3**; and one on June 5, 2025, attached as **Exhibit 4**.

13. TDOC did not respond to the Petitioner's May 22, 2025 request or request additional time to do so until September 26, 2025.[5] *See infra* at ¶ 23.

---

[4] For the Court's convenience, the Petitioner has included a table of the requests and responses or lack thereof, below.

[5] The Petitioner sent Jennifer Brenner, TDOC General Counsel, an email on June 17, 2025 inquiring as to the status of her requests. The next day, Brenner informed the Petitioner that the project "was delegated in part," and the she had reached out for status. Brenner also informed the Petitioner that "there are also several layers of approval that need to be met before this response can be released, so I will get you an update as soon as possible." A copy of that email correspondence is attached as **Exhibit 5**.

14. On June 18, 2025, TDOC, through the Respondent determined that it needed until August 18, 2025 to produce the record(s) or information and/or to make a determination of a proper response to the Petitioner's June 5, 2025 request. *See* June 18, 2025 Newport Response, attached as **Exhibit 6**.

15. TDOC did not respond to any of the Petitioner's TPRA requests by its self-imposed deadlines of June 6, 2025 or August 18, 2025.

16. However, on September 9, 2025—three months after TDOC's self-imposed deadline—the Respondent denied the Petitioner's May 1, 2025 request almost entirely. *See* September 9, 2025 Newport Response, attached as **Exhibit 7**. Specifically, the Respondent provided a disclosure of records to Request No. 2(a) and denied the remainder of the Petitioner's Requests (Nos. 1(a)–(e), and 2(b)–(e))[6].

17. The Petitioner's May 1, 2025 request did not seek any identifying information or information otherwise deemed confidential by the execution secrecy statute. For example:

a. Request 1(a) requested: "The quantity and inventory of lethal injection chemicals (Pentobarbital) currently in the possession of the Tennessee Department of Correction."

b. Request 1(b) requested: "The expiration or use-by dates for all lethal injection chemicals (Pentobarbital) currently in the possession of the Tennessee Department of Correction as

[6] According to the Respondent, TDOC did not have responsive records to Request Nos. 1(c) and 2(b)–(e).

determined in the inventory conducted 30 days before Oscar Smith's scheduled execution."

c. Request 1(d) requested: "The results of any quality assurance or quality control testing done on lethal injection chemicals (pentobarbital) by the Tennessee Department of Correction."

d. Request 1(e) requested: "All information regarding the transportation and storage of lethal injection chemicals (Pentobarbital) by the Tennessee Department of Correction."

18. The Respondent cited Tennessee Code Annotated § 10-7-504(h) as the sole basis for the denials.

19. On September 16, 2025, TDOC, through the Respondent, denied the Petitioner's June 5, 2025 request in part. Specifically, the Respondent denied Request Nos. 1–6 and 9–14 and provided a disclosure of records to Request Nos. 7 and 8. *See* September 16, 2025 Newport Response, attached as **Exhibit 8**.

20. The Petitioner's June 5, 2025 request did not seek any identifying information or information otherwise deemed confidential by the execution secrecy statute[7]. For example:

---

[7] The first part of Request No. 1 could be construed as requesting identifying information: "The names, manufacturer(s) and/or compounding pharmacy(s). . . for the lethal injection chemicals that were either prepared for use or used in the execution of Oscar Smith"; however, the second part was not: "dates of expiration for the lethal injection chemicals that were either prepared for use or used in the execution of Oscar Smith." In any event, these records could have been redacted and provided under Tennessee Code Annotated § 10-7-504(h)(2).

a. Request 2 requested: "The results of any testing of the lethal injection chemicals performed before, during, and after the execution of Oscar Smith."

b. Request 4 requested: "All packaging of the lethal injection chemicals that were either prepared for the use or used in the execution of Oscar Smith."

c. Request 6 requested: "All package inserts of the lethal injection chemicals that were either prepared for the use or used in the execution of Oscar Smith."

21. The Respondent cited Tennessee Code Annotated § 10-7-504(h) as the sole basis for the denial of confidential records regarding the lethal injection chemicals, and Tennessee Code Annotated § 10-7-504(a)(1) as the basis for denial of the vital sign monitoring strips (Request No. 3).

22. Upon information and belief, the vital sign monitoring strips are not a "medical record" under Tennessee Code Annotated § 10-7-504(a)(1) because they were not generated in the course of medical treatment. Rather, the records were created by TDOC to monitor Oscar Smith's heart as the state executed him.

23. Ten days later, the Respondent provided a limited disclosure of records in response to the Petitioner's May 22, 2025 request. *See* September 26, 2025 Newport Response, attached as **Exhibit 9**. The Respondent also determined that the records in response to Request No. 4 were "still being processed." To date, TDOC has not

provided records in response to Request No. 4 of the Petitioner's May 22, 2025 request.

24. Under the TPRA, the records requested by the Petitioner that do not seek identifying information are public records and the Petitioner is entitled to their production or personal inspection. *See* Tenn. Code Ann. § 10-7-505(a). Specifically, the Petitioner is entitled to, and requests:

a. Records in response to Request Nos. 1(a), (b), (d), and (e) in **Exhibit 1**;

b. Records in response to Request No. 4 in **Exhibit 3**; and

c. Records in response to Request Nos. 1–3, 4, 6–8 and 13 in **Exhibit 4**.

25. Additionally, the Respondent should be made to show, by a preponderance of the evidence, why TDOC does not have responsive records corresponding with specific provisions in the revised lethal injection protocol for:

a. Request Nos. 1(c) and 2(b)–(e) in **Exhibit 1**; and

b. Request Nos. 5, 9–12, and 14 in **Exhibit 4.**

26. The failure to produce these public records constitutes a willful denial under Tennessee Code Annotated § 10-7-505.

<u>Table of TPRA Requests Related to Oscar Smith</u>

| | May 1, 2025 Request **(Ex. 1)** |
|---|---|
| Date Filed | May 1, 2025 |
| Initial Response (if applicable) | May 6: 2025 **(Ex. 2)** |
| Date of Extension | June 6, 2025 |

| | |
|---|---|
| (if applicable) | |
| Date of Response | September 9, 2025 (**Ex. 7**) |
| Records Produced | Request No. 2(a) |
| Records Not Produced | Request Nos. 1(a)–(e), 2(b)–(e) |
| | |
| | May 22, 2025 Request (**Ex. 3**) |
| Date Filed | May 22, 2025 |
| Initial Response (if applicable) | N/A |
| Date of Extension (if applicable) | N/A |
| Date of Response | September 26, 2025 (**Ex. 9**) |
| Records Produced | Request Nos. 1–3, 5–7 |
| Records Not Produced | Request No. 4 |
| | |
| | June 5, 2025 Request (**Ex. 4**) |
| Date Filed | June 5, 2025 |
| Initial Response (if applicable) | June 18: 2025 (**Ex. 6**) |
| Date of Extension (if applicable) | August 18, 2025 |
| Date of Response | September 16, 2025 (**Ex. 8**) |
| Records Produced | Request Nos. 7 and 8 |
| Records Not Produced | Request Nos. 1–6, 9–14 |

## II. TPRA Requests Related to Byron Black

27. On August 11, 2025, the Petitioner submitted a TPRA request to TDOC following the execution of Byron Black. *See* August 11, 2025 TPRA Request, attached as **Exhibit 10**.

28. The August 11, 2025 request sought substantially the same information as the Petitioner's prior TPRA requests related to the execution of Oscar Smith;

however, it was intended to ease the burden on TDOC for responding and producing records by combining the requests into one single document.

29. On August 15, 2025, TDOC, through the Respondent, determined that it needed an additional sixty (60) days to produce the record(s) or information and/or to make a determination of a proper response. *See* August 15, 2025 Newport Response, attached as **Exhibit 11.**

30. On October 20, 2025, the Respondent provided a limited disclosure of records in response to Request Nos. 2(a), 3, 7, and 8. *See* October 20, 2025 Newport Response, attached as **Exhibit 12.** TDOC, through the Respondent, denied Request Nos. 1 (including all subparts), 2(b)–(e), 4–7, and 9–11.

31. The Petitioner's August 11, 2025 request did not seek any identifying information or information otherwise deemed confidential by the execution secrecy statute. For example:

a. Request 1(a) requested: "The quantity and inventory of lethal injection chemicals (Pentobarbital) currently in the possession of the Tennessee Department of Correction."

b. Request 1(b) requested: "The expiration or use-by dates for all lethal injection chemicals (Pentobarbital) currently in the possession of the Tennessee Department of Correction as

determined in the inventory conducted 30 days before Byron Black's[8] scheduled execution."

c. Request 1(c) requested: "The quantity of expired lethal injection chemicals and records of disposal of expired chemicals as determined in the inventory conducted 30 days before Byron Black's execution."

d. Request 1(d) requested: "The results of any quality assurance or quality control testing done on lethal injection chemicals (pentobarbital) by the Tennessee Department of Correction."

e. Request 1(e) requested: "All information regarding the transportation and storage of lethal injection chemicals (Pentobarbital) by the Tennessee Department of Correction."

32. Under the TPRA, the records requested in the Petitioner's August 11, 2025 request are public records and the Petitioner is entitled to their production or personal inspection. *See* Tenn. Code Ann. § 10-7-505(a). Specifically, the Petitioner is entitled to, and requests:

a. Records in response to Request Nos. 1(a)–(e), 4, 6, and 11 in **Exhibit 10**.

---

[8] The Respondent's October 20, 2025 response mistakenly listed "Oscar Smith" as the execution for which records were being sought; however, the Petitioner's request clearly seeks information related to the execution of Byron Black in all parts and subparts. *Compare* **Ex. 12** *with* **Ex. 10**. As a result, it is unclear if the denials were in response to the records sought in relation to the execution of Oscar Smith or the execution of Byron Black. Either way, they were willful in violation of Tennessee Code Annotated § 10-7-505.

33. Additionally, the Respondent should be made to show, by a preponderance of the evidence, why TDOC does not have responsive records corresponding with specific provisions in the revised lethal injection protocol for:

a. Request Nos. 2(b)–(e), 5, 9, and 10 in **Exhibit 10**.

34. The failure to produce these public records constitutes a willful denial under Tennessee Code Annotated § 10-7-505.

Table of TPRA Requests Related to Byron Black

| | August 11, 2025 Request **(Ex. 10)** |
|---|---|
| Date Filed | August 11, 2025 |
| Initial Response (if applicable) | August 15: 2025 (**Ex. 11**) |
| Date of Extension (if applicable) | Sixty (60) Days (October 14, 2025) |
| Date of Response | October 20, 2025 (**Ex. 12**) |
| Records Produced | Request Nos. 2(a), 3, 7, and 8 |
| Records Not Produced | Request Nos. 1(a)–(e), 2(b)–(e), 4–6, and 9–11 |

## Count I:

**The TDOC's denial—as a matter of policy—of the Petitioner's public records requests related to the judicial execution of Tennessee citizens, constitutes a willful denial in violation of the Tennessee Public Records Act.**

35. The public records denials by TDOC, through the Respondent, have violated the TPRA in the following ways:

a. The Respondent did not respond to the Petitioner's May 1, 2025 TPRA request (**Ex. 1**) until three months after setting a deadline of June 6, 2025 to do so. The failure to respond is a willful denial under Tennessee Code Annotated §§ 10-7-503(a)(1)(B) and (3), and § 505.

b. The Respondent did not provide any response to the Petitioner's May 22, 2025 TPRA request (**Ex. 3**), until four months after it was submitted. The failure to respond is a willful denial under Tennessee Code Annotated §§ 10-7-503(a)(1)(B) and (3), and § 505.

c. The Respondent indicated that records responsive to Request No. 4 in the Petitioner's May 22, 2025 TPRA request (**Ex. 3**) were still being processed. To date, the Petitioner has not received any records in response to Request No. 4. The failure to respond is a willful denial under Tennessee Code Annotated §§ 10-7-503(a)(1)(B) and (3), and § 505.

d. The Respondent did not produce any records in response to the Petitioner's June 5, 2025 TPRA Request (**Ex. 4**) by its self-imposed August 18, 2025 deadline. The failure to respond is a willful denial under Tennessee Code Annotated §§ 10-7-503(a)(2)(B) and (a)(3), and § 505.

e. The failure to provide public records in response to Request Nos. 1(a), (b), (d), and (e) in **Exhibit 1**; Request No. 4 in **Exhibit 3**; and Request Nos. 1, 2, 4, 6–8 and 13 in **Exhibit 4** is a willful denial under Tennessee Code Annotated §§ 10-7-503(a)(1)(B) and (3), and § 505.

f. The Respondent did not produce any records in response to the Petitioner's August 11, 2025 TPRA Request (**Ex. 10**) by its self-imposed October 14, 2025 deadline. The failure to respond is a willful denial under Tennessee Code Annotated §§ 10-7-503(a)(2)(B) and (a)(3), and § 505.

g. The failure to provide public records in response to Request Nos. 1(a)–(e), 4, 6, and 11 in **Exhibit 10** is a willful denial under Tennessee Code Annotated §§ 10-7-503(a)(1)(B) and (3), and § 505.

h. The failure to maintain records in accordance with the lethal injection protocol as requested in Request Nos. 1(c) and 2(b)–(e) in **Exhibit 1**, Request Nos. 5, 9–12, and 14 in **Exhibit** 4, and Request Nos. 2(b)–(e), 5, 9, and 10 in **Exhibit 10** is a willful denial under Tennessee Code Annotated §§ 10-7-503(a)(1)(B) and (3), and § 505.

36. TDOC, through the Respondent, has waived all other exemptions to record disclosure by relying solely on the secrecy statute provision at Tennessee Code Annotated § 10-7-504(h).

37. The Respondent's reliance on the execution secrecy statute under Tennessee Code Annotate § 10-7-504(h) is overly broad, selective, irregular, and arbitrary.

38. By the plain language of the statute, only information "identifying an individual or entity as a person or entity who or that has been or may in the future be directly involved in the process of executing a sentence of death" are confidential and not open to public inspection. Tenn. Code Ann. § 10-7-504(h)(1).

39. The Petitioner's requests either seek information that does not run afoul of the "identification" provisions of the secrecy statute, *see, e.g.* **Ex. 1** ("The quantity and inventory of lethal injection chemicals (Pentobarbital) currently in the possession of the Tennessee Department of Correction," "The expiration or use-by dates for all lethal injection chemicals (Pentobarbital) currently in the possession of the Tennessee Department of Correction"); or can reasonably be redacted and produced, *see* Tenn. Code Ann. § 10-7-504(h)(2) ("Information made confidential by this subsection (h) shall be redacted wherever possible *and nothing in this subsection (h) shall be used to limit or deny access to otherwise public information because a file, a document, or data file contains confidential information.*) (emphasis added).

40. TDOC's routine and blanket policy of denying requests made for information relating to its execution protocols constitute a willful denial under Tennessee Code Annotated §§ 10-7-503(a)(2)(B) and (a)(3), and § 505.

## Prayer for Relief

Accordingly, the Petitioner requests that this Court:

A. Grant the Petitioner access to the records requested herein, Tenn. Code Ann. § 10-7-505(e), or in the alternative, grant judicial review of the Respondent's actions, Tenn. Code Ann. § 10-7-505(a).


Case 3:25-cv-00442 Document 48-2 Filed 11/06/25 Page 19 of 65 PageID #: 618

B. Use its statutory authority and issue an order requiring the Respondent to "immediately appear and show cause, if they have any, why the petition should not be granted." Tenn. Code Ann. §§ 10-7-505(b) and (c).

C. In its discretion, require the Respondent to submit the records under seal for review by the Court. Tenn. Code Ann. § 10-7-505(b).

D. Exercise its full statutory authority to grant declaratory and injunctive relief requiring the Respondent to grant the Petitioner access to the records requested herein "broadly construed so as to give the fullest possible public access to public records," and to ensure future compliance with the TPRA. Tenn. Code Ann. § 10-7-505(d).

E. Find that the Respondent knew that such records are public and willfully refused to disclose them. Tenn. Code Ann. § 10-7-505(g).

F. Grant any other relief warranted in this Court's discretion.

Respectfully submitted,

By: ______________________________

Luke P. Ihnen, TN BPR No. 035190
Stephen A. Ferrell, TN BPR No. 025170
Susanne Bales, TN BPR No. 017868
FEDERAL DEFENDER SERVICES
OF EASTERN TENNESSEE, INC.
800 S. Gay Street, Suite 2400
Knoxville, TN 37929
Phone: (865) 637-7979
Fax: (865) 637-7999
Luke_Ihnen@fd.org
Stephen_Ferrell@fd.org
Susanne_Bales@fd.org

*Counsel for the Petitioner*

IN THE CHANCERY COURT FOR KNOX COUNTY, TENNESSEE

Megan Kerrigan

Plaintiff(s)

v. Case No. ______

Patrick Newport, Senior Associate Counsel

Tennessee Department of Correction, in his official capacity

Defendant(s)

**COST BOND**

I (We), Megan Kerrigan, as Principal(s), and Federal Defender Services of Eastern Tennessee, Inc., as Surety, are held and firmly bound unto the Clerk and Master of Knox County Chancery Court for the payment of all costs awarded against the Principal(s). To that end, we bind ourselves, our heirs, executors and administrators.

The Principal(s) is/are commencing legal proceedings in the Chancery Division or Probate Division of Knox County Chancery Court. If the Principal(s) shall pay all costs adjudged against them, then this obligation is void. If the Principal(s) fail to pay such costs, then the Surety shall undertake to pay all costs adjudged against the Principal(s). Mandated at T.C.A. § 20-12-120 *et seq.*

**PRINCIPAL(S)**

Megan Kerrigan

(Print or Type) Principal

Social Security Number: [redacted]

Address: 800 S. Gay Street, Suite 2400

Knoxville, TN 37929

Employer: FDSET

Employer's Address: 800 S. Gay Street, Suite 2400

Knoxville, TN 37929

[signature]

Signature of Principal

______

(Print or Type) Principal

Social Security Number: ______

Address: ______

Employer: ______

Employer's Address: ______

______

Signature of Principal

**SURETY**

Federal Defender Services of Eastern Tennessee, Inc.

(Print or Type) Surety

Gianna Maio

Signature of Surety

Address: 800 S. Gay Street, Suite 2400

Knoxville, TN 37929

# Exhibit 1

| | |
|---|---|
| **From:** | Megan Kerrigan |
| **To:** | jen.brenner@tn.gov |
| **Subject:** | TPRA letter attached |
| **Date:** | Thursday, May 1, 2025 9:48:00 AM |
| **Attachments:** | 2025.05.01 TPRA TDOC.Final.pdf |

Dear Ms. Brenner:

Attached is a TPRA request for information on the lethal injection drugs. I have also mailed a hard copy to your office. Please let me know if you have any questions.

Thank you,


***Megan Kerrigan, MSW***
CHU Investigator/ Mitigation Specialist
Federal Defender Services of Eastern Tennessee, Inc.
800 South Gay Street, Suite 2400
Knoxville, TN 37929-9714
Tel: 865-637-7979
Direct: 865-595-3476
Fax: 865-637-7999
Megan_kerrigan@fd.org


"In separateness lies the world's greatest misery; in compassion lies the world's true strength."
Buddha


*This e-mail contains PRIVILEGED and CONFIDENTIAL information intended only for the use of the addressee(s) named above. If you are not the intended recipient of this e-mail, or an authorized employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please notify us by reply e-mail and delete this e-mail. Thank you for your cooperation.*

# FEDERAL DEFENDER SERVICES
OF EASTERN TENNESSEE, INCORPORATED

Gianna Maio, **Federal Defender**

Stephen Ferrell, **CHU Supervisor**

**Assistant Federal Defenders**
**Capital Habeas Unit**
Susanne Bales
Molly Kincaid
Luke P. Ihnen
Emily Elison


May 1, 2025

***VIA EMAIL: Jen.Brenner@tn.gov***

Jennifer L. Brenner
Tennessee Department of Correction
Rachel Jackson Building
320 Sixth Avenue North
Nashville, Tennessee 37243

Dear Counsel Foy:

Pursuant to the Tennessee Public Records Act, Tennessee Code Annotated §10-7-503 *et seq.*, I respectfully request an opportunity to inspect and copy the records identified below. I specifically request all documents in existence as of **January 8, 2025, to the present.** Names and titles may be redacted.

This request for information includes, but is not limited to: documents, papers, notes, drafts, reports, records, memoranda, letters, email, text messages, voicemail records, meeting agenda, minutes, canceled checks, contracts, financial or performance audits, personnel investigations, maps, books, photographs, microfilms, electronic data processing files and output, films, sound recordings, documentation of any sort or other material, regardless of physical form or characteristics related to **execution by lethal injection.**

This request specifically seeks:

1. Information regarding the inventory of lethal injection chemicals and equipment for use in the execution of Oscar Smith and other Tennessee death row inmates, including but not limited to:

    a. The quantity and inventory of lethal injection chemicals (Pentobarbital) currently in the possession of the Tennessee Department of Correction. *See* Tennessee Department of Correction Lethal Injection Execution Protocol (Jan. 8, 2025) at 13 ("The Department will procure a sufficient supply of LIC to be used in lethal-injection executions. . . . RMSI Warden will conduct a semi-annual inventory of the container to verify its contents and the expiration dates of LIC. An additional inventory will be conducted


800 S. Gay Street, Suite 2400
Knoxville, Tennessee 37929-9714

Telephone 865-637-7979
Fax 865-637-7999

30 days before a scheduled execution. All inventories will be . . . documented in the log.").

b. The expiration or use-by dates for all lethal injection chemicals (Pentobarbital) currently in the possession of the Tennessee Department of Correction as determined in the inventory conducted 30 days before Oscar Smith's scheduled execution. *See* Tennessee Department of Correction Lethal Injection Execution Protocol (Jan. 8, 2025) at 13("RMSI Warden will conduct a semi-annual inventory of the container to verify its contents and the expiration dates of LIC. An additional inventory will be conducted 30 days before a scheduled execution.").

c. The quantity of expired lethal injection chemicals and records of disposal of the expired chemicals as determined in the inventory conducted 30 days before Oscar Smith's scheduled execution. *See* Tennessee Department of Correction Lethal Injection Execution Protocol (Jan. 8, 2025) at 13 ("If an inventory reveals expired LIC, appropriate disposal will occur.").

d. The results of any quality assurance or quality control testing done on lethal injection chemicals (Pentobarbital) by the Tennessee Department of Correction. *See* Tennessee Department of Correction Lethal Injection Execution Protocol (Jan. 8, 2025) at 13 ("The LIC is subject to quality assurance or quality control testing.").

e. All information regarding the transportation and storage of lethal injection chemicals (Pentobarbital) by the Tennessee Department of Correction. *See* Tennessee Department of Correction Lethal Injection Execution Protocol (Jan. 8, 2025) at 13 ("The Department will follow recommended guidelines for safe transport and storage of LIC.").

2. Information regarding the pre-execution practice schedule that began 30 days before Oscar Smith's scheduled execution. *See* Tennessee Department of Correction Lethal Injection Execution Protocol (Jan. 8, 2025) at 14–15. This includes but is not limited to:

   a. Documentation of the date and time of practice sessions conducted pursuant to Tennessee Department of Correction Lethal Injection Execution Protocol (Jan. 8, 2025) at 12 ("All practice sessions are documented with the date and time[.]" Names and signatures of participants may be redacted.

   b. Documentation of what each practice session consists of and how it is carried out.

c. Documentation of the inventory of execution equipment. *See* Tennessee Department of Correction Lethal Injection Execution Protocol (Jan. 8, 2025) at 14, ¶¶(I)(4), (II)(4).

d. Documentation of any "needed maintenance" of execution equipment. *See* Tennessee Department of Correction Lethal Injection Execution Protocol (Jan. 8, 2025) at 14, ¶¶(I)(4), (II)(4).

e. Documentation that any "needed maintenance" of execution equipment has occurred and the credentials and qualifications of the person or persons who carried out the needed maintenance. *See* Tennessee Department of Correction Lethal Injection Execution Protocol (Jan. 8, 2025) at 14, ¶¶(I)(4), (II)(4).

To the extent there are documents responsive to our requests that you are not disclosing, please inform us of the specific reason for non-disclosure and general nature (including date) of any such document.

Thank you for your assistance. Please contact me with any questions or concerns: 865-637-7979 or megan_kerrigan@fd.org

Sincerely,

FEDERAL DEFENDER SERVICES
OF EASTERN TENNESSEE, INC.

BY:______________________________
Megan C. Kerrigan, Investigator

# Exhibit 2

**PUBLIC RECORD REQUEST RESPONSE FORM**
TENNESSEE DEPARTMENT OF CORRECTION

May 6, 2025

Megan C. Kerrigan

In response to your records request received on May 1, 2025 __________, our office is taking the action(s)[1] indicated below:

☐ The public record(s) responsive to your request will be made available for inspection:
  Location: ______________________________
  Date & Time: ____________________________

☐ Copies of public record(s) responsive to your request are:
  ☐ Attached;
  ☐ Available for pickup at the following location:
  __________________________________; or
  ☐ Being delivered via: ☐ USPS First-Class Mail ☐ Electronically ☐ Other: ____________.

☐ Your request is denied on the following grounds:
  ☐ Your request was not sufficiently detailed to enable identification of the specific requested record(s). You need to provide additional information to identify the requested record(s).
  ☐ No such record(s) exists or this office does not maintain record(s) responsive to your request.
  ☐ No proof of Tennessee citizenship was presented with your request. Your request will be reconsidered upon presentation of an adequate form of identification.
  ☐ You are not a Tennessee citizen.
  ☐ You have not paid the estimated copying/production fees.
  ☐ The following state, federal, or other applicable law prohibits disclosure of the requested records:
  ________________________________________.

■ It is not practicable for the records you requested to be made promptly available for inspection and/or copying because:
  ■ It has not yet been determined that records responsive to your request exist; or
  ■ The office is still in the process of retrieving, reviewing, and/or redacting the requested records.

The time reasonably necessary to produce the record(s) or information and/or to make a determination of a proper response to your request is: June 6, 2025 ________________________.

If you have any additional questions regarding your record request, please contact
Patrick Newport

Sincerely,

Patrick Newport
Senior Associate Counsel

# Exhibit 3

# FEDERAL DEFENDER SERVICES
OF EASTERN TENNESSEE, INCORPORATED

Gianna Maio, **Federal Defender**

Stephen Ferrell, **CHU Supervisor**

**Assistant Federal Defenders**
**Capital Habeas Unit**
Susanne Bales
Molly Kincaid
Luke P. Ihnen
Emily Elison


May 22, 2025

***VIA EMAIL: Jen.Brenner@tn.gov***

Jennifer L. Brenner
Tennessee Department of Correction
Rachel Jackson Building
320 Sixth Avenue North
Nashville, Tennessee 37243

Dear Counsel Brenner:

Pursuant to the Tennessee Public Records Act, Tennessee Code Annotated §10-7-503 *et seq*., I respectfully request an opportunity to inspect and copy the records identified below. I specifically request all documents in existence as of **January 8, 2025, to the present.** Names and titles may be redacted.

This request for information includes, but is not limited to: documents, papers, notes, drafts, reports, records, memoranda, letters, emails, text messages, voicemail records, meeting agendas, minutes, canceled checks, contracts, financial or performance audits, personnel investigations, maps, books, photographs, microfilms, electronic data processing files and output, films, sound recordings, documentation of any sort or other material, regardless of physical form or characteristics related to the **execution by lethal injection** of Oscar Smith.

This request specifically seeks:

1. Any logs or other records confirming maintenance staff are scheduled to be at RMSI at least 4 hours before the scheduled execution of Oscar Smith. *See* Tennessee Department of Correction Lethal Injection Execution Protocol (Jan. 8, 2025) at 16 ("RMSI Warden").

2. Any logs or other records documenting that each room in the Capital Punishment Unit receives a final inspection specific to its function as it pertains to the scheduled execution of Oscar Smith.. The Capital Punishment Unit includes but it is not limited to, the inmate's cell, contact and non-contact visitation areas, the control room, the secure monitoring area, execution chamber, and lethal injection room. *See* Tennessee Department of Correction Lethal Injection Execution Protocol (Jan. 8, 2025) at 16 ("Central Office Personnel").


800 S. Gay Street, Suite 2400
Knoxville, Tennessee 37929-9714

Telephone 865-637-7979
Fax 865-637-7999

3. Any logs or other records verifying inventory and functionality of equipment in the Capital Punishment Unit as it pertains to the scheduled execution of Oscar Smith. *See* Tennessee Department of Correction Lethal Injection Execution Protocol (Jan. 8, 2025) at 16 ("RMSI Personnel").

4. Any logs or other records documenting the retrieval of LIC with the Warden and/or as it pertains to the scheduled execution of Oscar Smith. *See* Tennessee Department of Correction Lethal Injection Execution Protocol. (Jan. 8, 2025) at 18 ("Special Operations Team").

5. Any logs or other records confirming that the phones in the execution chamber are operational for the scheduled execution of Oscar Smith. *See* Tennessee Department of Correction Lethal Injection Execution Protocol (Jan. 8, 2025) at 18 ("Special Operations Team").

6. Any logs or other records confirming that the camera monitor the IV site is operational for the scheduled execution of Oscar Smith. *See* Tennessee Department of Correction Lethal Injection Execution Protocol (Jan. 8, 2025) at 18 ("Special Operations Team").

7. Any logs or other records documenting the preparation of the syringes of Saline and Pentobarbital for the execution of Oscar Smith. *See* Tennessee Department of Correction Lethal Injection Execution Protocol (Jan. 8, 2025) at 18 ("Special Operations Team") for the scheduled execution of Oscar Smith.

To the extent there are documents responsive to our requests that you are not disclosing, please inform us of the specific reason for non-disclosure and general nature (including date) of any such document.

Thank you for your assistance. Please contact me with any questions or concerns: 865-637-7979 or megan_kerrigan@fd.org

Sincerely,

FEDERAL DEFENDER SERVICES
OF EASTERN TENNESSEE, INC.

BY: *Megan C Kerrigan*
Megan C. Kerrigan, Investigator

# Exhibit 4

**FEDERAL DEFENDER SERVICES**
OF EASTERN TENNESSEE, INCORPORATED

Gianna Maio, **Federal Defender**

Stephen Ferrell, **CHU Supervisor**

**Assistant Federal Defenders**
**Capital Habeas Unit**
Susanne Bales
Molly Kincaid
Luke P. Ihnen
Emily Elison

RECEIVED
2025 JUN 10 PM 2:49
DEPT. OF CORRECTION
LEGAL SERVICES

June 5, 2025

***VIA EMAIL: Jen.Brenner@tn.gov***

Jennifer L. Brenner
Tennessee Department of Correction
Rachel Jackson Building
320 Sixth Avenue North
Nashville, Tennessee 37243

Dear Counsel Brenner:

Pursuant to the Tennessee Public Records Act, Tennessee Code Annotated § 10-7-503 *et seq.*, I respectfully request an opportunity to inspect and copy the records identified below. I specifically request all documents in existence as of **April 22, 2025, to the present**. Names and titles may be redacted.

This request for information includes, but is not limited to: documents, papers, notes, drafts, reports, records, memoranda, letters, email, text messages, voicemail records, meeting agenda, minutes, canceled checks, contracts, financial or performance audits, personnel investigations, maps, books, photographs, microfilms, electronic data processing files and output, films, sound recordings, documentation of any sort or other material, regardless of physical form or characteristics related to **the execution of Oscar Smith.**

This request specifically seeks:

1. The names, manufacturer(s) and/or compounding pharmacy(s), and dates of expiration for the lethal injection chemicals that were either prepared for use or used in the execution of Oscar Smith.

2. The results of any testing of the lethal injection chemicals performed before, during, and after the execution of Oscar Smith.

3. All vital sign monitoring strips including, but not limited to, EKG, pulse oximeter, $CO_2$, and blood pressure strips from the start of monitoring until monitoring was shut off.

800 S. Gay Street, Suite 2400
Knoxville, Tennessee 37929-9714

Telephone 865-637-7979
Fax 865-637-7999

4. All packaging of the lethal injection chemicals that were either prepared for the use or used in the execution of Oscar Smith.

5. Information regarding all equipment used in the execution of Oscar Smith including, but not limited to, used ("Set A") syringes and unused ("Set B") syringes and any labels affixed to syringes or prepared for syringes.

6. All package inserts of the lethal injection chemicals that were either prepared for the use or used in the execution of Oscar Smith.

7. All logs or other documentation mandated by the revised protocol Part IV, pages 14–22, including, but not limited to, the Chemical Preparation Sheet, the "Department's records relating to the execution," and any documentation of the "review" and "changes made by TDOC personnel."

8. All logs or other documentation maintained by individuals assigned to specific posts throughout the prison mandated by the revised Protocol at pages 34–44.

9. All email correspondence, text messages, TDOC records, logs, reports, memoranda, or other documentation relating to the preparation for and performance of the execution of Oscar Smith, including events that transpired in the execution chamber before the media witnesses were able to view the execution chamber.

10. Any photographic, videographic, or audio recordings relating to the execution of Oscar Smith, including the preparation of lethal injection chemicals, the preparation of the IVs, the setting of the IVs, the execution of Oscar Smith, and any events that transpired in the execution chamber before the media witnesses were able to view the execution chamber.

11. All records of people who received medical attention or care before, during, and after the execution of Oscar Smith including, but not limited to, prison staff, official witnesses, family members, the Attorney General's designee, defense counsel witness, spiritual advisors, medical staff, and media representatives.

12. All information, in any form, regarding the Attorney General's designee experiencing syncope, fainting, losing consciousness, "blacking out," "passing out," or collapsing while in the execution chamber during the preparation for or the execution of Oscar Smith. This includes, but is not limited to, any records or documentation of any medical care or attention received by the Attorney General's designee.

13. The names of all people who entered the execution chamber between the time that the Restraint Team moved Oscar Smith to the execution chamber and when the Attorney General's designee, defense counsel witness, and clergy members were escorted to the official witness room. This request excludes the specific names of

RMSI personnel and any non-departmental personnel who comprised the IV team and the physician.

14. This request also includes records or documents generated or received as part of consideration of whether changes or modifications to the Protocol should be made.

To the extent there are documents responsive to our requests that you are not disclosing, please inform us of the specific reason for non-disclosure and general nature (including date) of any such document.

Thank you for your assistance. Please contact me with any questions or concerns: 865-637-7979 or megan_kerrigan@fd.org

Sincerely,

FEDERAL DEFENDER SERVICES
OF EASTERN TENNESSEE, INC.

BY: ______________________
Megan C. Kerrigan, Investigator

FEDERAL DEFENDER SERVICES
OF EASTERN TENNESSEE, INC.
800 S. Gay Street, Suite 2400
Knoxville, Tennessee 37929-9714

KNOXVILLE TN 377
6 JUN 2025 PM 2 L

FIRST-CLASS
US POSTAGE IMI PITNEY BOWES
ZIP 37929
02 7H
0006059783
$ 000.69⁰
JUN 05 2025

Jennifer L. Brenner
Tennessee Department of Corrections
Rachel Jackson Building
320 Sixth Avenue North
Nashville, Tennessee 37243

37243-

Ex 04 - 004

# Exhibit 5

| | |
|---|---|
| **From:** | Jen Brenner |
| **To:** | Megan Kerrigan |
| **Subject:** | RE: TPRA letter attached |
| **Date:** | Wednesday, June 18, 2025 1:57:07 PM |
| **Attachments:** | image001.png |

Good afternoon,
As this project was delegated in part, I have reached out for a status. There are also several layers of approval that need to be met before this response can be released, so I will get you an update as soon as possible. I appreciate your patience.

TN Department of Correction

**Jennifer L. Brenner**
General Counsel
Tenn. Dept. of Correction
Rachel Jackson Building, 6th Floor
320 6th Avenue North
Nashville, Tennessee 37243
Office: (615)741-9584
Cell: (629)395-9938
Email: Jen.Brenner@tn.gov

**From:** Megan Kerrigan <Megan_Kerrigan@fd.org>
**Sent:** Tuesday, June 17, 2025 1:07 PM
**To:** Jen Brenner <Jen.Brenner@tn.gov>
**Subject:** [EXTERNAL] RE: TPRA letter attached

**This Message Is From an External Sender**

This message came from outside your organization.

Please exercise caution. DO NOT open attachments or click links from unknown senders or unexpected email - STS-Security

Hello Ms. Brenner:

I just wanted to touch base on a request that was sent over on 5.1.2025, we received a response which I have attached stating that TDOC needed until June 6. 2025 to respond but we have still not received a response.

Our office also mailed a separate request on 5.22.2025, that we have not received a response for. I can email to you if your office has not received it if needed.

Thank you,

Megan Kerrigan

**From:** Megan Kerrigan
**Sent:** Thursday, May 1, 2025 9:48 AM
**To:** jen.brenner@tn.gov
**Subject:** TPRA letter attached

Dear Ms. Brenner:

Attached is a TPRA request for information on the lethal injection drugs. I have also mailed a hard copy to your office. Please let me know if you have any questions.

Thank you,

*Megan Kerrigan, MSW*
CHU Investigator/ Mitigation Specialist
Federal Defender Services of Eastern Tennessee, Inc.
800 South Gay Street, Suite 2400
Knoxville, TN 37929-9714
Tel: 865-637-7979
Direct: 865-595-3476
Fax: 865-637-7999
Megan_kerrigan@fd.org

"In separateness lies the world's greatest misery; in compassion lies the world's true strength."
Buddha

*This e-mail contains PRIVILEGED and CONFIDENTIAL information intended only for the use of the addressee(s) named above. If you are not the intended recipient of this e-mail, or an authorized employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this e-mail is strictly prohibited. If you have received this e-mail in error, please notify us by reply e-mail and delete this e-mail. Thank you for your cooperation.*

# Exhibit 6

## PUBLIC RECORD REQUEST RESPONSE FORM

TENNESSEE DEPARTMENT OF CORRECTION

June 18, 2025

Megan C. Kerrigan

In response to your records request received on June 10, 2025 ____________, our office is taking the action(s)[1] indicated below:

☐ The public record(s) responsive to your request will be made available for inspection:
Location: ______________________________________________
Date & Time: ___________________________________________

☐ Copies of public record(s) responsive to your request are:
- ☐ Attached;
- ☐ Available for pickup at the following location:
  ______________________________________________________; or
- ☐ Being delivered via: ☐ USPS First-Class Mail ☐ Electronically ☐ Other: ______________.

☐ Your request is denied on the following grounds:
- ☐ Your request was not sufficiently detailed to enable identification of the specific requested record(s). You need to provide additional information to identify the requested record(s).
- ☐ No such record(s) exists or this office does not maintain record(s) responsive to your request.
- ☐ No proof of Tennessee citizenship was presented with your request. Your request will be reconsidered upon presentation of an adequate form of identification.
- ☐ You are not a Tennessee citizen.
- ☐ You have not paid the estimated copying/production fees.
- ☐ The following state, federal, or other applicable law prohibits disclosure of the requested records:
  ______________________________________________________________________.

■ It is not practicable for the records you requested to be made promptly available for inspection and/or copying because:
- ■ It has not yet been determined that records responsive to your request exist; or
- ☐ The office is still in the process of retrieving, reviewing, and/or redacting the requested records.

The time reasonably necessary to produce the record(s) or information and/or to make a determination of a proper response to your request is: August 18, 2025 ______________________________.

If you have any additional questions regarding your record request, please contact
Patrick Newport

Sincerely,

Patrick Newport
Senior Associate Counsel

# Exhibit 7

TN Department of Correction

September 9, 2025

Via Email
Megan_Kerrigan@fd.org

Mrs. Megan C. Kerrigan
Federal Defender Services of Eastern Tennessee, Incorporated
800 S. Gay Street, Suite 2400
Knoxville, TN 37929-9714

Re: TPRA request regarding lethal injection documents January 8, 2025 to the present

Mrs. Kerrigan,

Thank you for your request. I apologize for the delay. This process has taken much longer than I anticipated. In response to your request, our office is taking the action(s) indicated below:

1. Information regarding the inventory of lethal injection chemicals and equipment for use in the execution of Oscar Smith and other Tennessee death row inmates including but not limited to:
   a. The quantity and inventory of lethal injection chemicals (Pentobarbital) currently in the possession of the Tennessee Department of Correction. *See* Tennessee Department of Correction Lethal Injection Execution Protocol (Jan. 8, 2025) at 13 ("The Department will procure a sufficient supply of LIC to be used in lethal-injection executions....RMSI Warden will conduct a semi-annual inventory of the container to verify its contents and expiration dates of LIC. An additional inventory will be conducted 30 days before a scheduled execution. All inventories will be...documented in the log.

      **This request is denied. These records are confidential under TCA § 10-7-504(h).**

   b. The expiration or use-by dates for all lethal injection chemicals (Pentobarbital) currently in the possession of the Tennessee Department of Correction as determined in the inventory conducted 30 days before Oscar Smith's scheduled execution. *See* Tennessee Department of Correction Lethal Injection Execution Protocol (Jan. 8, 2025) at 13 ("RMSI Warden will conduct a semi-annual inventory of the container to verify its contents and the expiration dates of LIC. An additional inventory will be conducted 30 days before a scheduled execution.")

TN Department of Correction

**This request is denied. These records are confidential under TCA § 10-7-504(h).**

c. The quantity of expired lethal injection chemicals and records of disposal of the expired chemicals as determined in the inventory conducted 30 days before Oscar Smith's scheduled execution. *See* Tennessee Department of Correction Lethal Injection Execution Protocol (Jan 8, 2025) at 13 ("If an inventory reveals expired LIC, appropriate disposal will occur.")

**This request is denied. TDOC does not have records responsive to this request.**

d. The results of any quality assurance or quality control testing done on lethal injection chemicals (pentobarbital) by the Tennessee Department of Correction. *See* Tennessee Department of Correction Lethal Injection Protocol (Jan. 8, 2025) at 13 ("The LIC is subject to quality assurance or quality control testing.")

**This request is denied. These records are confidential under TCA § 10-7-504(h).**

e. All information regarding the transportation and storage of lethal injection chemicals (Pentobarbital) by the Tennessee Department of Correction. *See* Tennessee Department of Correction Lethal Injection Execution Protocol (Jan. 8, 2025) at 13 ("The Department will follow recommended guidelines for safe transport and storage of LIC.")

**This request is denied. These records are confidential under TCA § 10-7-504(h).**

2. Information regarding the pre-execution practice schedule that began 30 days before Oscar Smith's scheduled execution. *See* Tennessee Department of Correction Lethal Injection Execution Protocol (Jan. 8, 2025) at 14-15. This includes but is not limited to:
   a. Documentation of the date and time of practice sessions conducted pursuant to Tennessee Department of Correction Lethal Injection Execution Protocol (Jan. 8, 2025) at 12 ("All practice sessions are documented with the date and time[.]" ("All practice sessions are documented with the date and time[.]" Names and signatures of participants may be redacted.

      **See attached. Portions of these records are confidential under TCA § 10-7-504(h).**

   b. Documentation of what each practice session consists of and how it is carried out.

      **This request is denied. TDOC does not have records responsive to this request.**

   c. Documentation of the inventory of execution equipment. *See* Tennessee Department of Correction Lethal Injection Execution Protocol (Jan. 8, 2025) at 14, ¶¶(I)(4), (II)(4).

TN Department of Correction

**This request is denied. TDOC does not have records responsive to this request.**

d. Documentation of any "needed maintenance" of execution equipment. *See* Tennessee Department of Correction Lethal Injection Execution Protocol (Jan. 8, 2025) at 14, ¶¶(I)(4), (II)(4).

**This request is denied. TDOC does not have records responsive to this request.**

e. Documentation that any "needed maintenance" of execution equipment has occurred and the credentials and qualifications of the person or persons who carried out the needed maintenance. *See* Tennessee Department of Correction Lethal Injection Execution Protocol (Jan. 8, 2025) at 14, ¶¶(I)(4), (II)(4).

**This request is denied. TDOC does not have records responsive to this request.**

Thanks,

Patrick Newport
Senior Associate Counsel
Tennessee Department of Correction

# Exhibit 8

TN Department of Correction

September 16, 2025

Via Email
Megan_Kerrigan@fd.org

Mrs. Megan C. Kerrigan
Federal Defender Services of Eastern Tennessee, Incorporated
800 S. Gay Street, Suite 2400
Knoxville, TN 37929-9714

Re: TPRA request regarding lethal injection documents April 22, 2025, to the present regarding the execution of Oscar Smith

Mrs. Kerrigan,

Thank you for your request. I apologize for the delay. This process has taken much longer than I anticipated. In response to your request, our office is taking the action(s) indicated below:

1. The names, manufacturer(s) and/or compounding pharmacy(s), and dates of expiration for the lethal injection chemicals that were either prepared for use or used in the execution of Oscar Smith.

   **This request is denied. These records are confidential under TCA § 10-7-504(h).**

2. The results of any testing of the lethal injection chemicals performed before, during, and after the execution of Oscar Smith.

   **This request is denied. These records are confidential under TCA § 10-7-504(h).**

3. All vital sign monitoring strips including, but not limited to, EKG, pulse oximeter, $CO_2$, and blood pressure strips from the start of monitoring until monitoring was shut off.

   **This request is denied. Health records are confidential under TCA § 10-7-504(a)(1).**

4. All packaging of the lethal injection chemicals that were either prepared for the use or used in the execution of Oscar Smith.

TN Department of Correction

**This request is denied. These records are confidential under TCA § 10-7-504(h).**

5. Information regarding all equipment used in the execution of Oscar Smith including, but not limited to, used ("Set A") syringes and unused ("Set B") syringes and any labels affixed to syringes or prepared for syringes.

**This request is denied. TDOC does not have any records responsive to this request.**

6. All package inserts of the lethal injection chemicals that were either prepared for the use or used in the execution of Oscar Smith.

**This request is denied. These records are confidential under TCA § 10-7-504(h).**

7. All logs or other documentation mandated by the revised protocol Part IV, pages 14-22, including, but not limited to, the Chemical Preparation Sheet, the "Department's records relating to the execution," and any documentation of the "review" and "changes made by TDOC personnel."

**See attached. Portions of these records are confidential under TCA § 10-7-504(h).**

8. All logs or other documentation maintained by individuals assigned to specific posts throughout the prison mandated by the revised Protocol at pages 34-44.

**See attached. Portions of these records are confidential under TCA § 10-7-504(h).**

9. All email correspondence, text messages, TDOC records, logs, reports, memoranda, or other documentation relating to the preparation for and performance of the execution of Oscar Smith, including events that transpired in the execution chamber before the media witnesses were able to view the execution chamber.

**This request is denied. TDOC does not have any records responsive to this request.**

10. Any photographic, videographic, or audio recordings relating to the execution of Oscar Smith, including the preparation of lethal injection chemicals, the preparation of the IVs, the setting of the IVs, the execution of Oscar Smith, and any events that transpired in the execution chamber before the media witnesses were able to view the execution chamber.

**This request is denied. TDOC does not have any records responsive to this request.**

11. All records of people who received medical attention or care before, during, and after the execution of Oscar Smith including, but not limited to, prison staff, official witnesses, family members, the Attorney General's designee, defense counsel witness, spiritual advisors, medical

staff, and media representatives.

**This request is denied. TDOC does not have any records responsive to this request.**

12. All information, in any form, regarding the Attorney General's designee experiencing syncope, fainting, losing consciousness, "blacking out," "passing out," or collapsing while in the execution chamber during the preparation for or the execution of Oscar Smith. This includes, but is not limited to, any records or documentation of any medical care or attention received by the Attorney General's designee.

**This request is denied. TDOC does not have any records responsive to this request.**

13. The names of all people who entered the execution chamber between the time that the Restraint Team moved Oscar Smith to the execution chamber and when the Attorney General's designee, defense counsel witness, and clergy members were escorted to the official witness room. This request excludes the specific names of RMSI personnel and any non-departmental personnel who comprised the IV team and the physician.

**This request is denied. These records are confidential under TCA § 10-7-504(h).**

14. This request also includes records or documents generated or received as part of consideration of whether changes or modifications to the Protocol should be made.

**This request is denied. TDOC does not have any records responsive to this request.**

Thanks,

Patrick Newport
Senior Associate Counsel
Tennessee Department of Correction

# Exhibit 9

TN Department of Correction

September 26, 2025

Via Email
Megan_Kerrigan@fd.org

Mrs. Megan C. Kerrigan
Federal Defender Services of Eastern Tennessee, Incorporated
800 S. Gay Street, Suite 2400
Knoxville, TN 37929-9714

Re: TPRA request regarding lethal injection documents January 8, 2025, to the present re: Oscar Smith.

Mrs. Kerrigan,

Thank you for your request. I apologize for the delay. This process has taken much longer than I anticipated. In response to your request, our office is taking the action(s) indicated below:

1. Any logs or other records confirming maintenance staff are scheduled to be at RMSI at least 4 hours before the scheduled execution of Oscar Smith. *See* Tennessee Department of Correction Lethal Injection Execution Protocol (Jan. 8, 2025) at 16 ("RMSI Warden").

   **See Oscar Smith Execution Protocol Checklist. Portions of this record are confidential under TCA § 10-7-504(h).**

2. Any logs or other records documenting that each room in the Capital Punishment Unit receives a final inspection specific to its function as it pertains to the scheduled execution of Oscar Smith. The Capital Punishment Unit includes but it is not limited to, the inmate's cell, contact and non-contact visitation areas, the control room, the secure monitoring area, execution chamber, and lethal injection room. *See* Tennessee Department of Correction Lethal Injection Execution Protocol (Jan. 8, 2025) at 16 ("Central Office Personnel").

   **See Oscar Smith Execution Protocol Checklist. Portions of this record are confidential under TCA § 10-7-504(h).**

3. Any logs or other records verifying inventory and functionality of equipment in the Capital Punishment Unit as it pertains to the scheduled execution of Oscar Smith. *See* Tennessee

Department of Correction Lethal Injection Execution Protocol (Jan. 8, 2025) at 16 ("RMSI Personnel").

**See Oscar Smith Execution Protocol Checklist. Portions of this record are confidential under TCA § 10-7-504(h).**

4. Any logs or other records documenting the retrieval of LIC with the Warden and/or as it pertains to the scheduled execution of Oscar Smith. *See* Tennessee Department of Correction Lethal Injection Execution Protocol. (Jan. 8, 2025) at 18 ("Special Operations Team").

**This request is still being processed. See Oscar Smith Execution Protocol Checklist. Portions of this record are confidential under TCA § 10-7-504(h). This request will be supplemented when records are ready.**

5. Any logs or other records confirming that the phones in the execution chamber are operational for the scheduled execution of Oscar Smith. *See* Tennessee Department of Correction Lethal Injection Execution Protocol (Jan. 8, 2025) at 18 ("Special Operations Team").

**See Oscar Smith Execution Protocol Checklist. Portions of this record are confidential under TCA § 10-7-504(h).**

6. Any logs or other records confirming that the camera monitor the IV site is operational for the scheduled execution of Oscar Smith. *See* Tennessee Department of Correction Lethal Injection Execution Protocol (Jan. 8, 2025) at 18 ("Special Operations Team").

**See Oscar Smith Execution Protocol Checklist. Portions of this record are confidential under TCA § 10-7-504(h).**

7. Any logs or other records documenting the preparation of the syringes of Saline and Pentobarbital for the execution of Oscar Smith. *See* Tennessee Department of Correction Lethal Injection Execution Protocol (Jan. 8, 2025) at 18 ("Special Operations Team") for the scheduled execution of Oscar Smith.

**See Oscar Smith Execution Protocol Checklist and Chemical Preparation Time sheet. Portions of these records are confidential under TCA § 10-7-504(h).**

TN Department of Correction

Thanks,

Patrick Newport
Senior Associate Counsel
Tennessee Department of Correction

# Exhibit 10

# FEDERAL DEFENDER SERVICES
OF EASTERN TENNESSEE, INCORPORATED

Gianna Maio, Federal Defender

Stephen Ferrell, CHU Supervisor

Assistant Federal Defenders
Capital Habeas Unit
Susanne Bales
Molly Kincaid
Luke P. Ihnen
Emily Elison


August 11, 2025

***VIA EMAIL: Jen.Brenner@tn.gov***

Jennifer L. Brenner
Tennessee Department of Correction
Rachel Jackson Building
320 Sixth Avenue North
Nashville, Tennessee 37243

Dear Counsel Brenner:

Pursuant to the Tennessee Public Records Act, Tennessee Code Annotated §10-7-503 *et seq.*, I respectfully request an opportunity to inspect and copy the records identified below. I specifically request all documents in existence as of **January 8, 2025, to the present.** Names and titles may be redacted.

This request for information includes, but is not limited to: documents, papers, notes, drafts, reports, records, memoranda, letters, email, text messages, voicemail records, meeting agenda, minutes, canceled checks, contracts, financial or performance audits, personnel investigations, maps, books, photographs, microfilms, electronic data processing files and output, films, sound recordings, documentation of any sort or other material, regardless of physical form or characteristics related to **the execution of Byron Black.**

This request specifically seeks:

1. Information regarding the inventory of lethal injection chemicals and equipment for use in the execution of Byron Black and other Tennessee death row inmates, including but not limited to:

    a. The quantity and inventory of lethal injection chemicals (Pentobarbital) currently in the possession of the Tennessee Department of Correction. *See* Tennessee Department of Correction Lethal Injection Execution Protocol (Jan. 8, 2025) at 13 ("The Department will procure a sufficient supply of LIC to be used in lethal-injection executions. . . . RMSI Warden will conduct a semi-annual inventory of the container to verify its contents and the expiration dates of LIC. An additional inventory will be conducted

30 days before a scheduled execution. All inventories will be . . . documented in the log.").

b. The expiration or use-by dates for all lethal injection chemicals (Pentobarbital) currently in the possession of the Tennessee Department of Correction as determined in the inventory conducted 30 days before Byron Black's scheduled execution. *See* Tennessee Department of Correction Lethal Injection Execution Protocol (Jan. 8, 2025) at 13("RMSI Warden will conduct a semi-annual inventory of the container to verify its contents and the expiration dates of LIC. An additional inventory will be conducted 30 days before a scheduled execution.").

c. The quantity of expired lethal injection chemicals and records of disposal of the expired chemicals as determined in the inventory conducted 30 days before Byron Black's scheduled execution. *See* Tennessee Department of Correction Lethal Injection Execution Protocol (Jan. 8, 2025) at 13 ("If an inventory reveals expired LIC, appropriate disposal will occur.").

d. The results of any quality assurance or quality control testing done on lethal injection chemicals (Pentobarbital) by the Tennessee Department of Correction. *See* Tennessee Department of Correction Lethal Injection Execution Protocol (Jan. 8, 2025) at 13 ("The LIC is subject to quality assurance or quality control testing.").

e. All information regarding the transportation and storage of lethal injection chemicals (Pentobarbital) by the Tennessee Department of Correction. *See* Tennessee Department of Correction Lethal Injection Execution Protocol (Jan. 8, 2025) at 13 ("The Department will follow recommended guidelines for safe transport and storage of LIC.").

2. Information regarding the pre-execution practice schedule that began 30 days before Byron Black's scheduled execution. *See* Tennessee Department of Correction Lethal Injection Execution Protocol (Jan. 8, 2025) at 14–15. This includes but is not limited to:

a. Documentation of the date and time of practice sessions conducted pursuant to Tennessee Department of Correction Lethal Injection Execution Protocol (Jan. 8, 2025) at 12 ("All practice sessions are documented with the date and time[.]" Names and signatures of participants may be redacted).

b. Documentation of what each practice session consists of and how it is carried out.

c. Documentation of the inventory of execution equipment. *See* Tennessee Department of Correction Lethal Injection Execution Protocol (Jan. 8, 2025) at 14, ¶¶(I)(4), (II)(4).

d. Documentation of any "needed maintenance" of execution equipment. *See* Tennessee Department of Correction Lethal Injection Execution Protocol (Jan. 8, 2025) at 14, ¶¶(I)(4), (II)(4).

e. Documentation that any "needed maintenance" of execution equipment has occurred and the credentials and qualifications of the person or persons who carried out the needed maintenance. *See* Tennessee Department of Correction Lethal Injection Execution Protocol (Jan. 8, 2025) at 14, ¶¶(I)(4), (II)(4).

3. All lethal injection chemicals that were both prepared for the use in and used in the execution of Byron Black.

4. All packaging of the lethal injection chemicals that were both prepared for the use in and used in the execution of Byron Black.

5. All equipment used in the execution of Byron Black including, but not limited to, used ("Set A") syringes and unused ("Set B") syringes if applicable and any labels affixed to syringes or prepared for syringes.

6. All package inserts of the lethal injection chemicals that were both prepared for the use in and used in the execution of Byron Black.

7. All logs or other documentation mandated by the revised protocol Part IV pages 14–22 including, but not limited to, the Chemical Preparation Sheet, the "Department's records relating to the execution," and any documentation of the "review" and "changes made by TDOC personnel."

8. All logs or other documentation maintained by individuals assigned to specific posts throughout the prison mandated by the revised protocol at pages 40–41.

9. All email correspondence, text messages, TDOC records, logs, reports, memoranda, or other documentation relating to the preparation for, as well as following the execution of Byron Black, including events that transpired in the execution chamber beyond media witness purview. This request also includes records or documents generated as part of consideration of whether changes or modifications to the protocol should be made.

10. Any photographic, videographic, or audio recordings relating to the execution of Byron Black, including the preparation of lethal injection chemicals, the preparation of the IVs, the setting of the IVs, and any other event that may have been recorded.

11. The results of any testing of the lethal injection chemicals performed before, during, and after the execution of Byron Black.

To the extent there are documents responsive to our requests that you are not disclosing, please inform us of the specific reason for non-disclosure and the general nature (including date) of any such document.

Thank you for your assistance. Please contact me with any questions or concerns: 865-637-7979 or megan_kerrigan@fd.org

Sincerely,

FEDERAL DEFENDER SERVICES
OF EASTERN TENNESSEE, INC.

BY: ______________________
Megan C. Kerrigan, Investigator

# Exhibit 11

# PUBLIC RECORD REQUEST RESPONSE FORM

TENNESSEE DEPARTMENT OF CORRECTION

August 15, 2025

Megan C. Kerrigan

In response to your records request received on August 11, 2025, our office is taking the action(s)[1] indicated below:

☐ The public record(s) responsive to your request will be made available for inspection:
Location: ______
Date & Time: ______

☐ Copies of public record(s) responsive to your request are:
- ☐ Attached;
- ☐ Available for pickup at the following location: ______; or
- ☐ Being delivered via: ☐ USPS First-Class Mail ☐ Electronically ☐ Other: ______.

☐ Your request is denied on the following grounds:
- ☐ Your request was not sufficiently detailed to enable identification of the specific requested record(s). You need to provide additional information to identify the requested record(s).
- ☐ No such record(s) exists or this office does not maintain record(s) responsive to your request.
- ☐ No proof of Tennessee citizenship was presented with your request. Your request will be reconsidered upon presentation of an adequate form of identification.
- ☐ You are not a Tennessee citizen.
- ☐ You have not paid the estimated copying/production fees.
- ☐ The following state, federal, or other applicable law prohibits disclosure of the requested records: ______.

■ It is not practicable for the records you requested to be made promptly available for inspection and/or copying because:
- ☐ It has not yet been determined that records responsive to your request exist; or
- ■ The office is still in the process of retrieving, reviewing, and/or redacting the requested records.

The time reasonably necessary to produce the record(s) or information and/or to make a determination of a proper response to your request is: 60 days.

If you have any additional questions regarding your record request, please contact

Patrick Newport.

Sincerely,

Patrick Newport
Senior Associate Counsel
6th Floor Rachel Jackson Building
320 6th Avenue North, Nashville, TN 37243
615-917-1713
Patrick.Newport@tn.gov

# Exhibit 12

TN Department of Correction

October 20, 2025

Via Email
Megan_Kerrigan@fd.org

Mrs. Megan C. Kerrigan
Federal Defender Services of Eastern Tennessee, Incorporated
800 S. Gay Street, Suite 2400
Knoxville, TN 37929-9714

Re: TPRA request regarding lethal injection documents January 8, 2025 to the present regarding the execution of Byron Black

Mrs. Kerrigan,

Thank you for your request. I apologize for the delay. This process has taken much longer than I anticipated. In response to your request, our office is taking the action(s) indicated below:

1. Information regarding the inventory of lethal injection chemicals and equipment for use in the execution of Byron Black and other Tennessee death row inmates including but not limited to:
   a. The quantity and inventory of lethal injection chemicals (Pentobarbital) currently in the possession of the Tennessee Department of Correction. *See* Tennessee Department of Correction Lethal Injection Execution Protocol (Jan. 8, 2025) at 13 ("The Department will procure a sufficient supply of LIC to be used in lethal-injection executions....RMSI Warden will conduct a semi-annual inventory of the container to verify its contents and expiration dates of LIC. An additional inventory will be conducted 30 days before a scheduled execution. All inventories will be...documented in the log.

      **This request is denied. These records are confidential under TCA § 10-7-504(h).**

   b. The expiration or use-by dates for all lethal injection chemicals (Pentobarbital) currently in the possession of the Tennessee Department of Correction as determined in the inventory conducted 30 days before Oscar Smith's scheduled execution. *See* Tennessee Department of Correction Lethal Injection Execution Protocol (Jan. 8, 2025) at 13 ("RMSI Warden will conduct a semi-annual inventory of the container to verify its contents and the expiration dates of LIC. An additional inventory will be conducted 30 days before a scheduled execution.")

TN Department of Correction

**This request is denied. These records are confidential under TCA § 10-7-504(h).**

c. The quantity of expired lethal injection chemicals and records of disposal of the expired chemicals as determined in the inventory conducted 30 days before Oscar Smith's scheduled execution. *See* Tennessee Department of Correction Lethal Injection Execution Protocol (Jan 8, 2025) at 13 ("If an inventory reveals expired LIC, appropriate disposal will occur.")

**This request is denied. These records are confidential under TCA § 10-7-504(h).**

d. The results of any quality assurance or quality control testing done on lethal injection chemicals (pentobarbital) by the Tennessee Department of Correction. *See* Tennessee Department of Correction Lethal Injection Protocol (Jan. 8, 2025) at 13 ("The LIC is subject to quality assurance or quality control testing.")

**This request is denied. These records are confidential under TCA § 10-7-504(h).**

e. All information regarding the transportation and storage of lethal injection chemicals (Pentobarbital) by the Tennessee Department of Correction. *See* Tennessee Department of Correction Lethal Injection Execution Protocol (Jan. 8, 2025) at 13 ("The Department will follow recommended guidelines for safe transport and storage of LIC.")

**This request is denied. These records are confidential under TCA § 10-7-504(h).**

2. Information regarding the pre-execution practice schedule that began 30 days before Byron Black's scheduled execution. *See* Tennessee Department of Correction Lethal Injection Execution Protocol (Jan. 8, 2025) at 14-15. This includes but is not limited to:
   a. Documentation of the date and time of practice sessions conducted pursuant to Tennessee Department of Correction Lethal Injection Execution Protocol (Jan. 8, 2025) at 12 ("All practice sessions are documented with the date and time[.]" ("All practice sessions are documented with the date and time[.]" Names and signatures of participants may be redacted.

   **See attached. Portions of these records are confidential under TCA § 10-7-504(h).**

   b. Documentation of what each practice session consists of and how it is carried out.

   **This request is denied. TDOC does not have records responsive to this request.**

   c. Documentation of the inventory of execution equipment. *See* Tennessee Department of

Correction Lethal Injection Execution Protocol (Jan. 8, 2025) at 14, ¶¶(I)(4), (II)(4).

**This request is denied. TDOC does not have records responsive to this request.**

d. Documentation of any "needed maintenance" of execution equipment. *See* Tennessee Department of Correction Lethal Injection Execution Protocol (Jan. 8, 2025) at 14, ¶¶(I)(4), (II)(4).

**This request is denied. TDOC does not have records responsive to this request.**

e. Documentation that any "needed maintenance" of execution equipment has occurred and the credentials and qualifications of the person or persons who carried out the needed maintenance. *See* Tennessee Department of Correction Lethal Injection Execution Protocol (Jan. 8, 2025) at 14, ¶¶(I)(4), (II)(4).

**This request is denied. TDOC does not have records responsive to this request.**

3. All lethal injection chemicals that were both prepared for the use in and used in the execution of Byron Black.

**See attached. Portions of the records are confidential under TCA § 10-7-504(h).**

4. All packaging of the lethal injection chemicals that were both prepared for the use in and used in the execution of Byron Black.

**This request is denied. These records are confidential under TCA § 10-7-504(h).**

5. All equipment used in the execution of Byron Black including, but not limited to, used ("Set A") syringes and unused ("Set B") syringes if applicable and any labels affixed to syringes or prepared for syringes.

**This request is denied. TDOC does not have records responsive to this request.**

6. All package inserts of the lethal injection chemicals that were both prepared for the use in and used in the execution of Byron Black.

**This request is denied. These records are confidential under TCA § 10-7-504(h).**

7. All logs or other documentation mandated by the revised protocol Part IV pages 14-22 including, but not limited to, the Chemical Preparation Sheet, the "Department's records relating to the execution," and any documentation of the "review" and "changes made by TDOC personnel."

TN Department of Correction

**See attached. Portions of the records are confidential under TCA § 10-7-504(h).**

8. All logs or other documentation maintained by individuals assigned to specific posts throughout the prison mandated by the revised protocol at pages 40-41.

   **See attached. Portions of the records are confidential under TCA § 10-7-504(h).**

9. All email correspondence, text messages, TDOC records, logs, reports, memoranda, or other documentation relating to the preparation for, as well as following the execution of Byron Black, including events that transpired in the execution chamber beyond media witness purview. This request also includes records or documents generated as part of consideration of whether changes or modifications to the protocol should be made.

   **This request is denied. TDOC does not have records responsive to this request.**

10. Any photographic, videographic, or audio recordings relating to the execution of Byron Black, including the preparation of lethal injection chemicals, the preparation of the IVs, the setting of the IVs, and any other event that may have been recorded.

    **This request is denied. TDOC does not have records responsive to this request.**

11. The results of any testing of the lethal injection chemicals preformed before, during, and after the execution of Byron Black.

    **This request is denied. These records are confidential under TCA § 10-7-504(h).**

Thanks,

Patrick Newport
Senior Associate Counsel
Tennessee Department of Correction